8

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

OCT 0 6 1998

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| CYNTHIA RODRIGUEZ, JOVITA A. | * | |
| URRUTIA, BEATRIZ HUERTA and | * | |
| ANTHONY HEFNER | * | |
| | * | |
| VS. | * | CIVIL ACTION NO. B-98-085 |
| | * | |
| VICENTE RAMIREZ, BURNS | * | |
| INTERNATIONAL, INC., | * | |
| UNITED INVESTIGATIVE SERVICES, and | * | |
| U.S. IMMIGRATION AND | * | |
| NATURALIZATION SERVICE | * | |

## BURNS' MOTION FOR SUMMARY JUDGMENT

COMES NOW, Burns International, Inc. ("Burns") and files this Motion for Summary

Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  In support of this Motion,

Burns states as follows:

1.

This is a case in which plaintiffs purport to assert tort and contract claims based on

allegations of sexual harassment and retaliation.  As set forth more fully in Burns' supporting

memorandum, their claims are governed exclusively by the civil rights statutes, which  preempt

common law claims based on harassment and retaliation, and plaintiffs' statutory claims have

already been dismissed with prejudice.  See Cannizzaro v. Neiman Marcus, Inc., 979 F.Supp.

465, 478 (N.D. Tex. 1997); Cook v. Fidelity Investments, 908 F.Supp. 438, 442 (N.D. Tex.

1995); Vincent v. West Texas State University, 895 S.W. 2d 269 (Tex. App.--Amarillo 1995, *no*

*writ*); <u>Stinnett v. Williamson County Sheriff's Dept.</u>, 858 S.W. 2d 573 (Tex. App.--Austin 1993,

*writ denied*). Since all of plaintiffs' remaining claims against Burns are preempted by the federal

and state civil rights statutes, Burns is entitled to summary judgment in this matter.

2.

Even if plaintiffs' claims were not preempted by the civil rights statutes, they have no

evidence to support their claims. Their claims are premised on the allegation that Burns gave bad

employment references concerning them to another employer in retaliation for having reported and

opposed sexual harassment. However, the undisputed evidence, including plaintiffs' own sworn

testimony and documents, disproves their factual allegations entirely. The undisputed evidence

submitted with this motion proves that Burns did not provide negative information concerning

plaintiffs to prospective employers. Therefore, Burns is entitled to summary judgment for this

reason as well.

3.

Even if plaintiffs' claims were not preempted and had some evidentiary support, Burns

would still be entitled to summary judgment for additional reasons. Plaintiffs' claim of conspiracy

to terminate their alleged employment contracts with United is legally flawed because United

cannot interfere with its own contracts, thus negating the involvement of two or more persons,

an essential element of a claim of conspiracy. Therefore, Burns is entitled to summary judgment

on plaintiffs' claim of civil conspiracy for this independent reason.

4.

Plaintiffs' purported claim of breach of employment contract based on Burns' personnel policies is also subject to summary dismissal because Burns' personnel policies specifically stated that they did not create any contractual relationship between Burns and its employees. The law is clear in Texas that such a disclaimer precludes any claim for breach of contract based on personnel policies. <u>Federal Express v. Dutschmann</u>, 847 S.W. 2d 282, 283 (Tex. 1993).

5.

Finally, plaintiffs' claim of negligence is additionally barred by the Texas Workers' Compensation Act.

For these reasons, which are explained in more detail in Burns' Supporting Memorandum filed with this Motion, Burns respectfully requests that this Motion be granted and that plaintiffs' claims against Burns be dismissed with prejudice. Burns further requests that the Court award it such other relief, including costs and attorneys' fees, as the Court deems appropriate.

Respectfully submitted,

RODRIGUEZ, COLVIN & CHANEY, L.L.P.

By:_____
    NORTON A. COLVIN, JR.
    Federal I.D. #1941
    State Bar No. 04632100
    LAURA J. URBIS
    Federal I.D. #15558
    State Bar No. 10763775
    1201 E. Van Buren St.
    P. O. Box 2155
    Brownsville, Texas 78522
    Telephone: (956) 542-7441
    Fax: (956) 541-2170

AND

PHELPS DUNBAR, L.L.P.
THOMAS H. KIGGANS
Texas Bar No. 11393450
445 North Blvd., Suite 701
City National Bank Building
Post Office Box 4412
Baton Rouge, LA   70821-4412
Telephone: (225) 346-0285
Fax: (225) 376-0240

ATTORNEYS   FOR   DEFENDANT,   BURNS
INTERNATIONAL, INC.

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Burns Motion for Summary Judgment was served via certified mail, return receipt requested, on the following counsel of record on this the _6th_ day of _October_ , 1998:

Denis A. Downey
Attorney at Law
1185 F.M. 802, Suite #3
Brownsville, Texas 78521

Nancy L. Masso
Assistant U.S. Attorney
P. O. Box 1671
Brownsville, Texas   78522-1671

Manuel M. Vela
Rio Grande Law Center Bldg.
501 East Tyler Street
Harlingen, Texas   78550

Robert Whittington
Sanchez, Whittington & Janis
100 North Expressway 83
Brownsville, Texas   78521-2257

- 5 -

‥

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

CYNTHIA RODRIGUEZ, JOVITA A.          *
URRUTIA, BEATRIZ HUERTA and           *
ANTHONY HEFNER                        *
                                      *
VS.                                   *          CIVIL ACTION NO. B-98-085
                                      *
VICENTE RAMIREZ, BURNS                *
INTERNATIONAL, INC.,                  *
UNITED INVESTIGATIVE SERVICES, and    *
U.S. IMMIGRATION AND                  *
NATURALIZATION SERVICE                *

MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

STATEMENT OF THE CASE

I.     Nature of Case and Procedural History

        This case was originally filed in state court in August 1992.  Plaintiffs asserted various

theories of recovery based on allegations of sexual harassment and retaliation in connection with

their former employment at the Bayview Detention Center.

        In May 1993, the state district court granted motions for summary judgment filed by the

defendants and dismissed all of the plaintiffs' claims with prejudice.  Motions for new trial were

denied, and plaintiffs subsequently appealed.

        On October 12, 1995, the state court of appeals issued its opinion affirming summary

judgment on most of the plaintiffs' claims.  As to Burns International, Inc. ("Burns"), the court

affirmed summary judgment as to seven of the claims or theories which the plaintiffs had asserted:

CMPDF - www.hixio.com

1.   All of plaintiffs' claims under the employment discrimination statutes;

2.   All of plaintiffs' negligence claims for physical or emotional harm arising from their prior employment with Burns;

3.   All claims for wrongful discharge;

4.   Plaintiff Hefner's claims for conversion;

5.   All of plaintiff Huerta's claims against Burns of any nature;

6.   All of plaintiff Rodriguez' claims of assaultive torts based on alleged acts of defendant Ramirez attributable to Burns; and

7.   All of plaintiff Urrutia's claims for false imprisonment and intentional infliction of emotional distress based upon the acts of defendant Ramirez attributable to Burns.

*See* Exhibit A at 18.[1]

The plaintiffs did not challenge further the court of appeals' affirmance of summary judgment on these claims.  Therefore, all of these claims are final.

The court of appeals reversed summary judgment on four of the claims or theories which plaintiffs asserted against Burns.  However, the reversal on these claims were for technical and procedural reasons.  The following is a list of the remaining claims and the technical reasons for which the state court of appeals reversed the summary judgment:

1.   <u>Civil conspiracy</u> -- The court of appeals did not disagree with Burns' substantive arguments, but found that the arguments were raised in a brief supporting the summary judgment motion, rather than the motion itself as required by <u>McConnell</u>

---

[1] For the Court's convenience, a copy of the decision of the state court of appeals is attached as Exhibit A to this Memorandum.  The opinion will be cited as "Exhibit A at ___ ."

v. Southside Independent School District, 858 S.W. 2d 337 (Tex. 1993). *See* Exhibit A at 13-14.[2]

2.      Claim of negligence with regard to the hiring, supervision, retention or assignment of defendant Ramirez -- The court of appeals agreed with Burns' argument and summary judgment proof that it was not vicariously liable for the alleged sexual misconduct of Ramirez because (1)  all the specific acts of alleged sexual misconduct were barred by the statute of limitations, and (2) such misconduct would have been outside the course and scope of Ramirez' employment.[3] However, the court reasoned that Burns did not offer summary judgment arguments or proof to preclude a claim of its own negligence in the hiring, supervision, retention or assignment of Ramirez.  Although the plaintiffs never asserted such a claim, the court of appeals found that this claim could be construed from a liberal reading of plaintiffs' pleadings. *See* Exhibit A at 14-15.

3.      Contractual claim based upon employee handbook -- Although the state court of appeals agreed with Burns' substantive argument that employment policies generally do not create contracts, it found that Burns had not offered proper

---

[2]      In McConnell, the Texas Supreme Court held that the Texas Rules of Civil Procedure prohibit the granting of summary judgment based on an argument raised in a brief rather than a motion.  The appellate court only found the summary judgment improper on this technical distinction between the summary judgment motion and brief.  The Federal Rules of Civil Procedure do not make this distinction.

[3]      Burns denies that Ramirez engaged in any type of sexual misconduct, but simply assumes it to be true for purposes of this motion.

PD2:167016.1                                    - 3 -

summary judgment proof to show that its personnel policy manual used at the Bayview Detention Center was not contractual in nature. *See* Exhibit A at 16-17.

4. Tortious interference with business relationships -- Finally, the state court of appeals found that Burns had not offered summary judgment evidence to negate plaintiffs' claim of tortious interference with business relationships. *See* Exhibit A at 17-18.

Although addressed separately by the court of appeals, the tortious interference, negligence and conspiracy claims are based on the same factual allegations. Specifically, plaintiffs allege that Burns gave bad employment references concerning them to a prospective employer in retaliation for having reported and opposed alleged sexual harassment. (Second Amended Petition ¶s VII, VIII and XIV) The breach of contract claim is based on allegations of sexual harassment prohibited by Burns' personnel policies. (Second Amended Petition ¶ XI)

## II.     FACTUAL BACKGROUND RELEVANT TO REMAINING CLAIMS

Burns is a private corporation which at one time contracted to provide security guard services for the INS at its Bayview Detention Center. Burns' contract with the INS expired on September 27, 1990, at which time the contract was awarded by the INS to defendant United International Investigative Services ("United"). Plaintiffs were employed by Burns while Burns provided security services at the Bayview facility, but their employment with Burns ended at the time Burns' contract expired. (Austgen Affidavit ¶ 3)[4]

---

[4] The Affidavit of James Austgen is attached as Exhibit B.

During the entire time Burns provided security guard services at Bayview, Burns was a subscriber to workers' compensation insurance pursuant to the Texas Workers' Compensation Act. Burns also provided notice of its subscriber status to its employees in writing in conspicuous places throughout the workplace, and it did so continuously. None of the plaintiffs in this action ever submitted to Burns a written election waiving coverage under the Texas Workers' Compensation Act. (Austgen Affidavit ¶ 6)

Additionally, while Burns maintained the contract with the INS at Bayview, it also had personnel policies contained in a handbook. These policies were intended to provide guidelines in dealing with employment issues which arose at Bayview. For example, the policies specifically prohibited offensive and uninvited sexual conduct by employees, and encouraged all persons to report such inappropriate conduct to Burns' management so that prompt remedial steps could be taken. However, the personnel policies were never intended to create a contractual relationship between Burns and its employees at Bayview. In fact, the handbook containing these policies had a specific statement disclaiming any such contractual relationship. The disclaimer stated very clearly in all capital letters:

> IT IS NOT THE INTENTION OF THE EMPLOYER, NOR
> SHALL THE ISSUANCE OF THIS HANDBOOK CREATE A
> CONTRACTUAL RELATIONSHIP.

(Austgen Affidavit ¶ 5)

As mentioned, Burns' contract with the INS expired in September 1990, at which time the contract was assumed by United. Plaintiffs claim they were initially hired by United to continue working at Bayview. They allege, however, that Burns told United of their prior complaints of sexual harassment, which resulted in United's terminating their employment. (Second Amended

- 5 -

Petition ¶ V)  Plaintiffs further allege that such actions constitute "a violation of State and federal law."  (Second Amended Petition ¶ VII)  However, defendants have already been granted summary judgment by the state courts on all of plaintiffs' state and federal statutory claims.  (*See* Exhibit A at 14)  Plaintiffs are now attempting to resurrect those claims through various common law theories.  Specifically, they purport to assert claims of civil conspiracy under the civil rights statutes (Second Amended Petition ¶ VII); tortious interference with employment rights (Second Amended Petition ¶ VIII); breach of contract (Second Amended Petition ¶ XI); and negligence (Second Amended Petition ¶ XIV).[5]

Contrary to their allegations, plaintiffs' sworn testimony negates their claims.  Rodriguez admitted in her deposition that she actually has no idea why she was not hired by United.  She also admitted that she has no facts or evidence to support her allegations that Burns influenced United's decision in any way.  (Rodriguez Depo. at 74 and 82-83)[6]

Similarly, Urrutia admitted that, contrary to the allegations of her pleadings, she does not contend that Burns had anything to do with United's decision not to hire her.  She testified that she believed defendant Ramirez may have kept her from getting employed by United, but she testified that that occurred after Ramirez was no longer working for Burns. (Urrutia Depo. at 34-35)

---

[5] The other theories or causes of action set forth in the Second Amended Petition refer to defendants other than Burns.

[6] Relevant excerpts from the depositions of plaintiffs are attached to this memorandum  as Exhibits C through F.

Although all claims by plaintiff Huerta against Burns have already been dismissed, her sworn testimony further disproves the remaining plaintiffs' claims against Burns. Huerta also reported that she had been subject to sexually inappropriate conduct by an INS official during the time Burns provided security guard services at Bayview. However, her testimony is quite clear that Burns in no way retaliated against her. To the contrary, she testified that her Burns supervisor intervened on her behalf and protected her when she complained of sexual harassment. She testified unequivocally that Burns acted promptly and appropriately to stop the harassment, and that Captain Rubio, the highest ranking Burns employee at the Bayview facility, assisted her when she had problems. Thus, even though she reported sexual misconduct, she admitted that Burns assisted her in connection with her complaints, not retaliated against her, and that she was hired by United. (Huerta Depo. at 29-30 and 47-53)

Finally, plaintiff Hefner testified in his deposition that he, like Rodriguez and Urrutia, applied for employment with United, and he attributes United's refusal to hire him to "a black list" allegedly prepared by former Burns employees just before United took over the INS contract. (Hefner Depo. at 143-44) While Hefner's deposition testimony is somewhat ambiguous as to who prepared the alleged blacklist and when it was prepared, documents produced by him in April 1998 indicate that any such blacklist was prepared by INS officials, not anyone employed by Burns. He produced a letter allegedly given to him on October 9, 1990, approximately two weeks after United took over the contract at Bayview. The letter states: "The BLACK list does exist, it was made by Ruiz and Molinar . . . ." Ruiz and Molinar were INS officials, not Burns

employees. (Austgen Affidavit ¶ 4) Thus, Hefner's own testimony and documents prove that Burns had nothing to do with any alleged blacklist.[7]

Contrary to plaintiffs' allegations and subjective speculation, Burns did not attempt to preclude plaintiffs from retaining their employment at Bayview after United took over the INS contract in September 1990. Quite to the contrary, Burns specifically requested United to hire all its former employees to remain at Bayview. In fact, Burns had a financial incentive for plaintiffs to get hired by United and actively encouraged United to hire them. However, the INS apparently informed United that it needed to reduce the number of guards at Bayview by 40%-- from 170 to 103. Therefore, United chose who it would and would not hire, and Burns had nothing whatsoever to do with United's decisions. (Austgen Affidavit ¶ 3)

This evidence is not only uncontradicted, it is supported by United. William Guidice, President and Chief Executive Officer for United, made the decisions as to who would be hired by United.[8] Paragraph 7 of his affidavit states very clearly that United's hiring decisions "were in no way influenced by any information or recommendation of BURNS." He further testified under oath that Burns neither attempted to prevent plaintiffs from getting hired nor even informed United of plaintiffs' prior complaints of sexual harassment. (Guidice Affidavit ¶ 7)

---

[7] Burns does not believe there was any blacklist at all and that Hefner fabricated the letter he produced nearly eight years after it was supposedly given to him. Nonetheless, there is absolutely no evidence that Burns prepared any blacklist. To the contrary, plaintiffs' own testimony and purported documents show that Burns was not involved.

[8] The sworn affidavit of Guidice was filed with the state court before this matter was removed and is already a part of the record. A copy of the affidavit is attached as Exhibit G to this memorandum.

This evidence is also supported by the sworn testimony of Howard Bergendahl. Bergendahl was a supervisor for Burns at Bayview, was hired by United when Burns lost the contract, and then went to work for the INS. Bergendahl has no current relationship with Burns or United and no interest whatsoever in the outcome of this case. Bergendahl confirmed under oath that Guidice made all the hiring decisions for United, and Burns did nothing to prevent plaintiffs from continuing to work at Bayview when United took over the contract. (Bergendahl Depo. at 6-8, attached as Exhibit H)

Rodriguez, Urrutia and Hefner all filed charges of discrimination with the Equal Employment Opportunity Commission ("EEOC"). After investigating their charges, the EEOC found no merit to their allegations. (Rodriguez Depo. Exh. 13; Urrutia Depo. Exh. 4; Hefner Depo. at 152)

## ARGUMENT

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is proper if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. The Supreme Court has interpreted this rule to mandate the entry of summary judgment against a party who is unable, after an adequate time for discovery, to establish the existence of any element essential to her claim and on which she would bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552-53 (1986).

Burns is entitled to summary judgment, for several independent reasons.

First, all of plaintiffs claims or theories of recovery are premised upon allegations of sexual harassment or retaliation for having complained of sexual harassment. The federal and

- 9 -

state civil rights statutes provide the exclusive remedies for these types of claims, and plaintiffs cannot pursue these claims under general tort or contract theories.

Second, the undisputed evidence, including plaintiffs' own sworn testimony, proves that Burns did nothing to try to prevent plaintiffs from getting hired by United. To the contrary, the evidence proves that Burns encouraged United to hire all its former employees to continue working at Bayview, including plaintiffs, and Burns had nothing to do with any alleged blacklist. This undisputed evidence precludes plaintiffs from proving essential elements of their claims of conspiracy, tortious interference with employment rights, and negligence.

Third, plaintiffs claim of conspiracy to terminate their alleged employment contracts with United is also legally flawed because United cannot interfere with its own contracts, thus negating the involvement of two or more persons, an essential element of a claim of conspiracy.

Fourth, plaintiffs' claim for breach of employment contract based on Burns' personnel policies should be dismissed because Burns' personnel policies specifically stated that they did not create any contractual relationship between Burns and employees at Bayview. The law is clear in Texas that employee handbooks and related documents that merely advise employees of a company's policies and procedures do not create contractual rights on behalf of employees or contractual obligations on employers.

Finally, plaintiffs' claim of negligence with regard to the hiring, supervision, retention, assignment, or training of Ramirez is barred by the Texas Workers' Compensation Act.

For these reasons, as explained more fully below, all of plaintiffs' remaining claims against Burns should be dismissed with prejudice.

## I.   All of Plaintiffs' Common Law Claims or Theories of Recovery Are Preempted and Governed Exclusively by Federal and State Civil Rights Statutes.

All of the plaintiffs' remaining claims are premised upon the same factual allegations. Plaintiffs allege that they were subject to sexual harassment and/or reported sexual harassment during the time they were employed with Burns at Bayview. They further contend that Burns gave bad employment references concerning them to United in retaliation for having reported and opposed the alleged sexual harassment. Plaintiffs further allege that such actions constitute a "violation of State and federal law." (*See* Second Amended Petition ¶s VII, VIII, XIV, and XVI)

If plaintiffs' allegations were true, plaintiffs would have claims and remedies under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., and the Texas Commission on Human Rights Act ("TCHRA"). Both Title VII and the TCHRA strictly prohibit harassment in the workplace and retaliation for opposing workplace harassment. *See* Vincent v. West Texas State University, 895 S.W. 2d 469, 473 (Tex. App.--Amarillo 1995, *no writ*) ("sexual harassment is universally accepted as unlawful employment discrimination"); 42 U.S.C. § 2000e-3(a) (making it unlawful for an employer to retaliate against employees or applicants because they have opposed unlawful employment practices); Tex. Lab. Code Ann. § 21.055 (West 1998) (same under TCHRA).

These federal and state civil rights statutes specifically prohibit the very conduct about which plaintiffs complain here. In Robinson v. Shell Oil Co., 117 S.Ct. 843 (1997) the United States Supreme Court, in a unanimous decision, held that the prohibition against unlawful retaliation contained in Title VII is quite broad and prohibits employers from giving negative job references about former employees in retaliation for having previously opposed unlawful

discrimination. Thus, the claims which plaintiffs purport to assert here clearly fall within the protections of Title VII and the TCHRA.

However, prior to removal of this case, the state district court granted summary judgment on all of plaintiffs' state and federal statutory claims. The summary judgment on those claims was affirmed by the court of appeals. (*See* Exhibit A at 14) Those claims are therefore final, and plaintiffs cannot resurrect those through some type of general tort or contract theories.

Several courts have held that the state and federal civil rights statutes create the exclusive remedies for claims of discrimination and retaliation, and plaintiffs cannot avoid the procedures and remedies under these statutes by recasting their claims under common law theories.

The state court of appeals in Austin addressed this very issue in <u>Stinnett v. Williamson County Sheriff's Department</u>, 858 S.W. 2d 573 (Tex. App.--Austin 1993, *writ denied*). The plaintiff had complained of discrimination and was subsequently terminated by his employer. He sued his employer alleging unlawful retaliation, but seeking remedies under legal theories other than the TCHRA. The court of appeals held specifically that the TCHRA was created to provide the exclusive remedy for such a claim:

> The Human Rights Act created a comprehensive administrative review system to accomplish its purposes. *Schroeder*, 813 S.W. 2d at 485-86. We conclude that by providing a remedy for retaliation in the Human Rights Act, the legislature intended to create an <u>exclusive remedy under the terms of that statute</u>.

858 S.W. 2D at 577 (emphasis added).

The state court of appeals in Amarillo reached the same result in claims alleging sexual harassment and retaliation similar to those asserted by the plaintiffs here. In <u>Vincent v. West Texas State University</u>, 895 S.W. 2d 469 (Tex. App.--Amarillo 1995, *no writ*), the plaintiff

brought claims of sexual harassment and retaliation against her former employer, and just like the plaintiffs here, she sought to avoid the procedures and remedies set forth in the civil rights statutes by asserting common law claims. The court went through a detailed analysis of how the TCHRA and Title VII established mandatory administrative procedures for pursuing claims of harassment, discrimination and retaliation. The court then reasoned that to allow a plaintiff to assert such claims under common law theories would "eviscerat[e] the comprehensive administrative scheme established by the [T]CHRA, a result which this court will not condone." 895 S.W. 2d at 474. In affirming summary judgment for the employer, the court stated that the plaintiff's claims "involved retaliation for her reporting sexually harassing activity. The [T]CHRA proscribes such retaliation and, in doing so, preempts suit under related theories." 895 S.W. 2d at 474.

The federal courts in Texas have also recognized that Title VII and the TCHRA preempt common law claims falling under the scope of those statutes. In Cannizzaro v. Neiman Marcus, Inc., 979 F.Supp. 465 (N.D. Tex. 1997), the plaintiff alleged claims of sex and disability discrimination. Just as the plaintiffs here, the plaintiff in Cannizzaro attempted to assert common law theories of negligent training, negligent supervision and negligent retention. The court granted summary judgment, finding that such claims were "preempted by the Texas Commission on Human Rights Act." 979 F.Supp. at 478.

The court in Cook v. Fidelity Investments, 908 F.Supp. 438 (N.D. Tex. 1995) reached the same result. In Cook, the plaintiff asserted claims of racial discrimination under the civil rights statutes and common law theories. In granting summary judgment, the court found that the common law theories fell within the scope of the federal and state civil rights statutes and stated: "The TCHRA provides the exclusive state-law means for redress of employment discrimination

and preempts claims for discrimination brought under other state-law theories." 908 F.Supp. at 442.

In summary, the common law tort and contract theories which plaintiffs purport to assert fall squarely within the scope of Title VII and the TCHRA. These federal and state civil rights statutes provide the exclusive procedures and remedies for such claims and preempt the claims plaintiffs purport to assert here. Thus, Burns is entitled to summary judgment on all of the remaining claims in this action.

**II.     Plaintiffs' Claims Are Also Factually Insupportable as the Undisputed Evidence Proves That Burns Actually Encouraged United to Hire Plaintiffs and Did Nothing to Prevent Their Continued Employment at Bayview.**

Even if plaintiffs' claims were not preempted by the civil rights statutes, they have no evidence to support their allegation that Burns gave them bad references because they had complained of harassment and, thereby, caused United to terminate their employment at Bayview. To the contrary, the undisputed evidence proves that Burns actually encouraged United to continue plaintiffs' employment at Bayview.

James Austgen was the district manager for Burns and was responsible for all activities within his region. This included the Bayview Detention Center through September 1990, when United assumed the contract. Contrary to the plaintiffs' subjective allegations, Burns did not try to prevent plaintiffs from retaining their employment at Bayview when United took over the contract. Indeed, Burns had a direct financial interest in having United hire all of its former employees at Bayview, including the plaintiffs. If plaintiffs were not hired by United to continue working at Bayview, Burns would be required to pay unemployment compensation benefits. Consequently, when United took over the contract, Austgen actively encouraged United to hire

all of its former employees, including plaintiffs. However, United was apparently required by the INS to reduce the workforce at Bayview by about 40%. United made its own decisions as to who would and would not be retained, and Burns had nothing whatsoever to do with United's hiring decisions. (Austgen Affidavit ¶ 3)

Austgen's sworn testimony that Burns did nothing to prevent plaintiffs from continuing their employment at Bayview with United is supported by the sworn testimony of the President and Chief Executive Officer of United, William Guidice. In paragraph 7 of his Affidavit, Guidice testified under oath that United made all of its own hiring decisions, which "were in no way influenced by any information or recommendation of Burns." He further testified very specifically that Burns did **NOT** inform United that plaintiffs had previously made reports or complaints of sexual harassment. (Guidice Affidavit ¶ 7)

This evidence is also supported by the sworn testimony of Howard Bergendahl. Bergendahl was a supervisor for Burns at Bayview, was hired by United when Burns lost the contract, and then went to work with the INS. Bergendahl has no current relationship with Burns or United and no interest whatsoever in the outcome of this case. Bergendahl also testified under oath that Guidice made all the hiring decisions for United, and Burns did nothing to prevent plaintiffs from continuing to work at Bayview when United took over the contract. (Bergendahl Depo. at 6-8).

Therefore, the undisputed evidence proves that Burns did nothing to prevent plaintiffs from getting hired by United. To the contrary, Burns actively encouraged United to hire plaintiffs.

This evidence is not only undisputed, it is supported by plaintiffs' own sworn testimony. Plaintiffs Urrutia and Rodriguez admitted under oath in their depositions that Burns did nothing

to interfere with their attempts to continue working at Bayview after United assumed the contract. Urrutia testified very clearly that she does <u>not</u> contend that Burns kept her from getting hired by United. She contends that United first hired Ramirez, and <u>after</u> Ramirez began working for United, she subjectively believes he may have done something to prevent her from getting hired. Her testimony in this regard is quite clear:

> Q.  So you're saying that during the time Mr. Ramirez worked for United, you believe he kept you from being hired?
>
> A.  Yes, sir.
>
> Q.  <u>You don't contend that Burns kept you from being hired by United do you</u>?
>
> A.  <u>No, sir</u>.

(Urrutia Depo. at 35, emphasis added)[9]

Similarly, Rodriguez testified that she has no idea why she was not hired by United. She further admitted that she has no facts or evidence whatsoever to support her claim that she was not hired because Burns did not recommend her for employment. In her deposition, she testified as follows:

> Q.  Are you saying that as far as you know, then, their reason for not wanting -- for not recommending you for hire related solely to your performance on the job?
>
> A.  I don't know.
>
> Q.  You have no idea why they would not recommend you for hire is that what you are saying?

---

[9] United hired some of Burns' former supervisors, including defendant Ramirez, before United actually took over the contract. (Austgen Affidavit ¶ 3) Clearly, Burns cannot, as a matter of law, be held liable for what Ramirez may have told United <u>after</u> he was no longer employed with Burns.

A.    Correct.

Q.    You don't contend it was for any wrong reason, do you?

A.    If it was, I don't know what it was.

Q.    Do you contend that Burns had anything to do with your not being hired, say, by Wal-Mart or any subsequent employer?

A.    No.

(Rodriguez Depo. at 74)   She stated she subjectively believed her one complaint about sexual harassment may have been the reason she was not hired.  However, she admitted that that was nothing but a mere guess on her part:

Q.    What facts do you have to support that allegation?  Is it only a guess?

A.    Could be.

Q.    As far as you know sitting here today you're just guessing?

A.    It'd be a big guess.

Q.    Because you have no facts to support that; am I right?

A.    Correct.

(Rodriguez Depo. at 82-83)

Similarly, Hefner testified in his deposition that he subjectively believes that United terminated his employment because of an alleged black list prepared by persons <u>after</u> they were no longer working for Burns.  (Hefner Depo. at 143-44)  Even if he could somehow contend that Burns is legally responsible for acts committed by persons who are no longer their employees, his testimony is clearly nothing but speculation and, indeed, contradicted the very by documents which he contends support his claims.  In April 1998, he produced a letter allegedly given to him

in October 1990, a couple of weeks after United took over the contract. This letter states that the alleged black list was prepared by INS officials, not anyone who was ever employed with Burns. (Austgen Affidavit ¶ 4)

The Fifth Circuit has held on numerous occasions that a plaintiff's subjective belief about why an employer makes certain employment decisions is not competent evidence and cannot preclude summary judgment. *See, e.g.,* Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996); Ray v. Tandem Computers, Inc., 63 F.3d 429, 434 (5th Cir. 1995).

Thus, plaintiffs have no competent evidence supporting their allegations. To the contrary, their own sworn testimony and documents disproves their claims against Burns. Therefore, the undisputed evidence proves that Burns did nothing to interfere with their continued employment at Bayview after Burns lost the contract, and Burns is entitled to summary judgment as a matter of law.

**III.  Plaintiffs' Claim of Conspiracy to Terminate Their Alleged Employment Contracts With United Is Also Legally Flawed Because United Cannot Interfere With Its Own Contracts, Thus Negating the Involvement of Two or More Persons, an Essential Element of a Claim of Conspiracy.**

Plaintiff's claim of conspiracy fails for yet another independent reason. Plaintiffs allege that Burns and United conspired to interfere with their alleged employment contracts with United. Even assuming plaintiffs were hired by United and Burns then persuaded United to terminate their employment because they had filed sexual harassment claims, a conspiracy theory under these allegations fails as a matter of law.

One of the essential elements of a claim of civil conspiracy is that two or more persons agree to accomplish some unlawful objective. *See* Massey v. Armco Steel Co, 652 S.W. 2d 932,

934 (Tex. 1983). The law is also well settled that a party cannot tortiously interfere with its own contracts. John Masek Corp. v. Davis, 848 S.W. 2d 170, 175 (Tex. App. -- Houston [1st Dist.] 1992, *writ denied*); Schoellkopf v. Pledger, 778 S.W. 2d 897, 902 (Tex. App.-- Dallas 1989, *writ denied*); Frost National Bank v. Matthews, 713 S.W. 2d 365, 369 (Tex. App. -- Texarkana 1986, *writ refused n.r.e.*). Therefore, even if plaintiffs had an employment contract with United, United could not interfere with its own contract as a matter of law.

Moreover, the law is equally clear that a corporate defendant cannot conspire with itself, even if individual employees are named as separate defendants. Wilhite, 812 S.W. 2d at 5; Fojtic v. First National Bank of Beeville, 752 S.W. 2d 669, 673 (Tex. App. -- Corpus Christi 1988), *writ denied*, 775 S.W. 2d 632 (Tex. 1989). Thus, the alleged involvement of individual employees of either Burns or United does not help plaintiffs establish this essential element of their claim. Consequently, only one party could possibly be accused of interfering with plaintiffs' alleged employment contracts, and therefore, no claim of conspiracy can be maintained because the essential element of two or more conspirators is lacking as a matter of law.

**IV.    Plaintiffs' Purported Claim of Breach of Employment Contract Based on Burns' Personnel Policies Should Be Dismissed Because Burns' Personnel Policies Specifically Stated That They Did Not Create Any Contractual Relationship Between Burns and the Employees at Bayview.**

The law is clear in Texas that an employee hired for an indefinite period of time may be terminated at any time at the will of the employer. Federal Express Corp. v. Dutschmann, 846 S.W. 2d 282, 283 (Tex. 1993). Based upon this doctrine, the courts have uniformly and consistently held that employee handbooks and related documents that merely advise employees of a company's policies and procedures do not create contractual rights on behalf of employees

PD2:167016.1                                      - 19 -

or contractual obligations on employers. *See, e.g.*, Hicks v. Baylor University Medical Center, 789 S.W. 2d 299, 302 (Tex. App. -- Dallas 1990, *writ denied*); Salazar v. Amigos Del Valle, Inc., 754 S.W. 2d 410, 413 (Tex. App. -- Corpus Christi 1988, *no writ*); Stiver v. Texas Instruments, Inc., 750 S.W. 2d 843, 846 (Tex. App. -- Houston [14th Dist.] 1988, *no writ*); Vallone v. Agip Petroleum Co., 705 S.W. 2d 757, 759 (Tex. App. -- Houston [1st Dist.] 1986, *writ refused n.r.e.*); Reynolds Mfg. Co. V. Mendoza, 644 S.W. 2d 536, 539 (Tex. App. -- Corpus Christi 1982, *no writ*).

In the present case, Burns employment policies at Bayview contained a specific disclaimer stating that the policies were not intended to create any type of contractual relationship between Burns and the employees at Bayview. In fact, the disclaimer was written in all capital letters and stated as follows:

> IT IS NOT THE INTENTION OF THE EMPLOYER, NOR SHALL THE ISSUANCE OF THIS HANDBOOK CREATE A CONTRACTUAL RELATIONSHIP.

(Austgen Affidavit ¶ 5)

Under very similar facts, the Texas Supreme Court held in Federal Express Corp. v. Dutschmann, 846 S.W. 2d 282, 283 (Tex. 1993), that the lower courts had erred in allowing a breach of contract claim such as the one asserted here to go to the jury. The Supreme Court reversed the jury award and rendered judgment in favor of the employer, stating as follows:

> A disclaimer in an employee handbook, such as the one included by Federal Express, negates any implication that a personnel procedures manual places a restriction on the employment at will relationship.

846 S.W. 2d at 283.

Since Burns' policy manual used at the Bayview Detention Center provided a specific statement disclaiming that it was intended to be contractual in nature, plaintiffs' claim for breach of employment contract based upon those policies fails as a matter of law. Thus, plaintiffs' claim for breach of contract should be summarily dismissed for this reason as well.

## V. Plaintiffs' Claim of Negligence Is Barred by the Texas Workers' Compensation Act.

Plaintiffs' final cause of action asserted against Burns purports to allege a claim of negligence. Specifically, plaintiffs claim that Burns was negligent in not instructing defendant Ramirez "not to release confidential employee information" relating to the plaintiffs. (*See* Second Amended Petition ¶ XIV) The plaintiffs' allegation is not clear as to when Ramirez supposedly released confidential information concerning plaintiffs. However, whether this alleged conduct took place before or after Ramirez and plaintiffs were no longer working for Burns is immaterial for purposes of this motion. Obviously, if Ramirez improperly released information after he was no longer employed with Burns, Burns could not be held legally responsible for his acts.

On the other hand, if plaintiffs are complaining about some event while Ramirez and plaintiffs were still working for Burns, the claim of negligence would be precluded by the Texas Workers' Compensation Act.

Section 408.001 of the Texas Labor Code provides that the recovery of workers' compensation benefits is the exclusive remedy of an employee covered by workers' compensation insurance for a work-related injury sustained by the employee. Where an employer is a subscriber to workers' compensation insurance, and the employee has not waived in writing workers' compensation coverage, the remedies provided by the Workers' Compensation Act are exclusive,

and the employee is precluded from pursuing any common law claim against the employer for a work-related injury or illness.

At least two courts have recently addressed similar issues and summarily dismissed claims alleging that an employer was negligent in supervising co-workers who allegedly harassed and discriminated against the plaintiffs. Cook v. Fidelity Investments, 908 F.Supp. 438, 441-42 (N.D. Tex. 1995); Ajaz v. Continental Airlines, 156 F.R.D. 145, 148-49 (S.D. Tex. 1994).

The summary judgment evidence is undisputed that Burns was at all times a subscriber to workers' compensation insurance, notice of its subscriber status was properly given to the plaintiffs, and the plaintiffs did not elect in writing to waive coverage under the act. (Austgen Affidavit ¶ 6) Therefore, any claim by plaintiffs that Burns was negligent in the hiring, supervision, retention, assignment or training of Ramirez is barred by the exclusivity provision of the Workers' Compensation Act and should be summarily dismissed.

## CONCLUSION

In summary, all of the plaintiffs' remaining claims against Burns should be summarily dismissed for several independent reasons. First, their claims of harassment and retaliation are governed exclusively by federal and state civil rights statutes. Their claims under the civil rights statutes have already been dismissed, and they cannot circumvent the procedures and remedies under the civil rights statutes by recasting their claims under common law tort and contract theories. Since all of their remaining claims are preempted by the civil rights statutes, they should be dismissed with prejudice.

Even if plaintiffs' claims were not preempted by statutory law, their claims should be dismissed because the undisputed evidence proves that Burns did nothing to prevent plaintiffs from

getting hired by United.  The sworn testimony of Burns, United, and a completely disinterested

witness all prove that Burns actually encouraged United to hire all of its former employees to

continue working at Bayview, including plaintiffs.  Indeed, plaintiffs' own sworn testimony and

exhibits prove that Burns had nothing to do with preventing plaintiffs from continuing to work at

Bayview after United took over the contract.  This undisputed evidence precludes plaintiffs from

proving essential elements of their claims, and therefore, summary judgment is appropriate.

Even if plaintiffs' claims were not preempted, and even if they had some evidence to

support their factual allegations, their claims are legally flawed for other independent reasons.

Their claim of conspiracy is legally insupportable because United cannot interfere with its own

contracts, thus negating the involvement of two or more persons, an essential element of their

claim.  Plaintiffs' claim of breach of contract fails as a matter of law because Texas law is clear

that employee handbooks which disclaim any contractual relationship cannot be used as a basis

for a claim for breach of contract.  Finally, plaintiffs' claim of negligence is barred by the Texas

Workers' Compensation Act.

Respectfully submitted,

RODRIGUEZ, COLVIN & CHANEY, L.L.P.

By:_____
    NORTON A. COLVIN, JR.
    Federal I.D. #1941
    State Bar No. 04632100
    LAURA J. URBIS
    Federal I.D. #15558
    State Bar No. 10763775
    1201 E. Van Buren St.
    P. O. Box 2155
    Brownsville, Texas  78522
    Telephone: (956) 542-7441
    Fax: (956) 541-2170

AND

PHELPS DUNBAR, L.L.P.
THOMAS H. KIGGANS
Texas Bar No. 11393450
445 North Blvd., Suite 701
City National Bank Building
Post Office Box 4412
Baton Rouge, LA   70821-4412
Telephone: (225) 346-0285
Fax: (225) 376-0240

ATTORNEYS FOR DEFENDANT,
BURNS INTERNATIONAL, INC.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Request for Production was

served via certified mail, return receipt requested, on the following counsel of record on this the

_6th_ day of _October_ , 1998:

Denis A. Downey
Attorney at Law
1185 F.M. 802, Suite #3
Brownsville, Texas 78521

Nancy L. Masso
Assistant U.S. Attorney
P. O. Box 1671
Brownsville, Texas   78522-1671

Manuel M. Vela
Rio Grande Law Center Bldg.
501 East Tyler Street
Harlingen, Texas   78550

Robert Whittington
Sanchez, Whittington & Janis
100 North Expressway 83
Brownsville, Texas   78521-2257



NUMBER 13-93-478-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI

CYNTHIA RODRIGUEZ, ET AL.,                          Appellants,

v.

VICENTE RAMIREZ, ET AL.,                            Appellees.

On appeal from the 197th District Court of Cameron County, Texas.

# O P I N I O N

Before Chief Justice Seerden and Justices Hinojosa and Carr[1]
Opinion by Justice Hinojosa

Appellants, Cynthia Rodriguez, Jovita Urrutia, Beatriz Huerta, and Anthony

Hefner, sued appellees, Burns International, Inc., United International Investigative

Services, Inc., and Vicente Ramirez.  Appellants pleaded facts that might support

---

[1] Assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to TEX. GOV'T CODE ANN. §74.003 (Vernon 1988).

**EXHIBIT**

**A**

claims under several theories of recovery. The trial court, without specifying the grounds for its ruling, granted appellees' motions for summary judgment and entered judgment that appellants take nothing from appellees. By three points of error, appellants contend that the trial court erred in granting appellees' motions for summary judgment. We affirm in part and reverse and remand in part.

All four appellants worked as guards at the Immigration and Naturalization Service (INS) federal detention center in Bayview, Texas. Appellants worked for Burns until September 21, 1990, when Burns' contract with the INS expired. Except for Huerta, appellants were not hired by Burns' successor, United.

On August 28, 1992, appellants filed suit against Burns, United, and Vicente Ramirez, a detention center supervisor who worked for Burns and subsequently United. Rodriguez and Urrutia claimed that they were sexually harassed and assaulted by Ramirez and that they reported Ramirez's actions to Burns, which failed to take sufficient action. Rodriguez and Urrutia also complained that Burns failed to act on their numerous reports that Burns employees sexually harassed female detainees at the Bayview Detention Center. Rodriguez and Urrutia further alleged that Burns and Ramirez retaliated for these complaints by conspiring with United to prevent Rodriguez and Urrutia from being employed by United. Rodriguez and Urrutia claimed that they were not hired by United as a result of this conspiracy.

Huerta asserted that she was harassed by United in retaliation for cooperating with federal investigators inquiring into the allegations of sexual harassment at the

2

detention center. Huerta also claimed that United fired her because she was pregnant and that United improperly deducted money from her paycheck for health insurance, which United failed to provide.

Like Rodriguez and Urrutia, Hefner claimed that Burns, Ramirez, and United conspired to prevent him from being employed by United. Hefner asserted that Burns, Ramirez, and United entered into this conspiracy in retaliation for his actions in defense of the female security guards and detainees at the Bayview Detention Center.

Neither Ramirez nor United filed special exceptions, but Burns specially excepted to appellants' original petition. The trial court's docket sheet reflects both a hearing on Burns' special exceptions and the entry of a corresponding order, which is not part of the appellate record in this case. After the trial court's order on Burns' special exceptions, appellees amended their petition to address many of Burns' complaints. Burns neither immediately filed additional special exceptions nor moved to have unresponsive portions of appellants' pleadings struck. Instead, all three appellees moved for summary judgment.

While their motions for summary judgment were pending, Burns and United filed special exceptions to appellants' first amended petition. Nothing in the appellate record indicates that the court ruled on Burns' or United's special exceptions to appellants' first amended petition. As in their original petition, appellants pleaded facts in their first amended petition that might support claims under several theories of recovery.

3

Without specifying the grounds for its ruling, the trial court granted three separate summary judgments that appellants take nothing from appellees. By granting each appellee a take-nothing summary judgment, the trial court purported to dispose of every claim that appellants raised in their first amended petition. In order to sustain these summary judgments, we must determine that the pleadings and summary judgment evidence prove that no genuine issue of material fact exists and that the movants are entitled to judgment as a matter of law. *McFadden v. American United Life Ins. Co.*, 658 S.W.2d 147, 148 (Tex. 1983). We must accept all evidence favorable to the nonmovants as true, indulge the nonmovants with every favorable inference, and resolve any doubt in the nonmovants' favor. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 549 (Tex. 1985).

The trial court granted each of the three summary judgments under review without specifying the grounds upon which it relied. Moreover, each defendant's motion for summary judgment raised several grounds that might have served as the basis for the trial court's general grant of summary judgment. Accordingly, we must affirm the summary judgment if any one of the theories advanced in the motion for summary judgment is meritorious. *Martinez v. Corpus Christi Area Teachers Credit Union*, 758 S.W.2d 946, 950 (Tex. App.--Corpus Christi 1988, writ denied). Correspondingly, we must reverse the summary judgment and remand the causes of action that were not addressed in the motion for summary judgment. *Mafrige v. Ross*, 866 S.W.2d 590, 591-92 (Tex. Crim. App. 1993); *Celestino v. Mid-Am. Indem. Ins.*

4

*Co.*, 883 S.W.2d 310, 313-14 (Tex. App.--Corpus Christi 1994, writ denied). Any such remand must also include claims that might be reasonably inferred from a liberal construction of appellants' pleadings because appellees obtained no ruling on their special exceptions. *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 933-34 (Tex. 1983); *Cox v. Galena Park Indep. Sch. Dist.*, 895 S.W.2d 745, 749 (Tex. App.--Corpus Christi 1994, n.w.h.); *see also Smithkline Beecham Corp. v. Doe, 38 Tex. Sup. Ct. J. 1058, 1064-65 (July 21, 1995) and Boyles v. Kerr*, 855 S.W.2d 593, 601 (Tex. 1993) (discussing construction of pleadings in absence of special exceptions).

### *United International Investigative Services, Inc.*

By their first point of error, appellants contend that the trial court erred in granting United's motion for summary judgment. We will first address which specific claims and grounds for summary judgment have been properly submitted for review.

United attacked appellants' claims for civil conspiracy in a brief supporting its motion for summary judgment. We cannot consider this ground for summary judgment because it was not stated in the motion for summary judgment itself. *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 339-41 (Tex. 1993). United's summary judgment motion and proof do, however, specifically address the following claims: 1) employment discrimination and harassment claims of Rodriguez, Urrutia, and Hefner; 2) appellants' claims for intentional infliction of emotional distress; 3) appellants' claims for false imprisonment and other assaultive torts based on Ramirez's acts for which United may be held liable; 4) Huerta's statutory

5

employment discrimination and harassment claims; 5) Huerta's negligence claims for physical or emotional harm rising from her employment with United; 6) and Huerta's claims that United failed to provide health insurance as promised.

Regarding the first five claims, appellants neither presented contrary evidence in response to United's motion for summary judgment nor attacked the legal sufficiency of those grounds on appeal. Accordingly, summary judgment on the first five claims is not under review because appellants have not perfected appeal from summary judgment on those claims. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678-79 (Tex. 1979); *Thompson v. Vinson & Elkins*, 859 S.W.2d 617, 621 (Tex. App.--Houston [1st Dist.] 1993, writ denied). Accordingly, we overrule appellants' first point of error as it relates to the following claims against United: 1) employment discrimination and harassment claims of Rodriguez, Urrutia, and Hefner; 2) appellants' claims for intentional infliction of emotional distress; 3) appellants' claims for false imprisonment and other assaultive torts based on *Ramirez's* acts for which United may be held liable; 4) Huerta's statutory employment discrimination and harassment claims; and 5) Huerta's negligence claims for physical or emotional harm rising from her employment with United.

The only claim against United that may be reviewed by this court is Huerta's claim that United failed to provide health insurance as promised. United offered two grounds for summary judgment on Huerta's claim that United failed to provide the promised health insurance after making deductions from her paycheck for this

CVisPDF - www.fxsno.com

purpose. First, United contended that it is entitled to summary judgment based on the affidavit of William Guidice, United's president and chief executive officer. Second, United argued that Huerta's claim is preempted by the federal Employee Retirement Income Security Act. 29 U.S.C. §§ 1001-1461 (1988) ("ERISA").

Guidice's affidavit states as follows:

> Once the said contract with the Service was "assumed" by UNITED, it appeared that none of the employees had previously received health insurance, although current employees of UNITED -- after an insurer could be retained -- could receive health insurance. Thus, there was never a deduction for health insurance from the base wage; there was a "health and welfare allowance" under the contract with the Service for employees, which the employer could apply to a pension or disburse in cash. In that health insurance was not available for the employees, such employees (such as BEATRIZ HUERTA), were paid in cash in lieu of such insurance, and if reinstated, she would have, presumably, been insured.

As president of United, Guidice is considered a party with an interest in this litigation. *See Panama-Williams, Inc. v. Lipsey*, 576 S.W.2d 426, 431 (Tex. Civ. App.--Houston [1st Dist.] 1978, writ ref'd n.r.e.). Affidavit testimony from an interested witness will support a motion for summary judgment only if that evidence is uncontroverted. TEX. R. CIV. P. 166a(c).

Huerta's affidavit is attached to appellants' response to United's motion for summary judgment. In her affidavit, Huerta states as follows:

> I was told by UIIS that guards would have health insurance. Health insurance was not provided by UIIS nor am I aware of any cash payment being made to myself in place of health insurance.

We find that despite the phrase "nor am I aware," Huerta's affidavit controverts Guidice's testimony because the context of Huerta's statement shows that she has personal knowledge of the matter she is testifying about. *See Moya v. O'Brien*, 618

7

S.W.2d 890, 893 (Tex. Civ. App.--Houston [1st Dist.] 1981, writ ref'd n.r.e.); *see also Coleman v. United States Sav. Ass'n*, 846 S.W.2d 128, 131 (Tex. App.--Fort Worth 1993, no writ) (distinguishing apparently conflicting caselaw). Accordingly, Guidice's affidavit cannot be used as summary judgment evidence to refute the claim that United failed to provide health insurance as promised. We cannot affirm the trial court's judgment on Huerta's claim based on this ground.

As its second ground for summary judgment on Huerta's claim, United contends that it established federal preemption as a matter of law. We disagree. The United States Supreme Court broadly construes the ERISA preemption of all state laws insofar as they relate to employee benefit plans. *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 144 (1990); *see* 29 U.S.C. §§ 1144(a). Nevertheless, not every employee benefit plan qualifies as an ERISA plan. *E.g., Taggart Corp. v. Life & Health Benefits Admin.*, 617 F.2d 1208 (5th Cir.), *cert. denied*, 450 U.S. 1030 (1980); *see also Hansen v. Continental Ins. Co.*, 940 F.2d 971, 977-78 (5th Cir. 1991) (discussing requisites for benefit plans under ERISA). United wholly abandoned the task of establishing that the qualities of the disputed employee benefit plan bring that plan within the scope of ERISA. Accordingly, we must resolve our doubts on this issue in favor of the nonmovant, Huerta. *Nixon*, 690 S.W.2d at 549. As with United's first ground for summary judgment, we cannot affirm the trial court's judgment on Huerta's claim based on this second ground.

We hold that the trial court erred in granting United's motion for summary judgment on appellants' claims against United for civil conspiracy and on Huerta's

claims that United failed to provide health insurance as promised. We sustain appellants' first point of error as to these claims.

We AFFIRM the trial court's summary judgment in favor of United on the following claims: 1) employment discrimination and harassment claims of Rodriguez, Urrutia, and Hefner; 2) appellants' claims for intentional infliction of emotional distress; 3) appellants' claims for false imprisonment and other assaultive torts based on Ramirez's acts for which United may be held liable; 4) Huerta's statutory employment discrimination and harassment claims; and 5) Huerta's negligence claims for physical or emotional harm rising from her employment with United.

We REVERSE the trial court's summary judgment on appellants' claims against United for civil conspiracy and Huerta's claims against United that United failed to provide health insurance as promised and REMAND these claims to the trial court for further proceedings.

*Vicente Ramirez*

By their second point of error, appellants contend that the trial court erred in granting Ramirez's motion for summary judgment. We will first address which claims and grounds for summary judgment have been properly submitted for review.

By his motion for summary judgment, Ramirez challenged 1) Hefner's claims for conversion, 2) Urrutia's claims for false imprisonment and intentional infliction of emotional distress, 3) Rodriguez's claims for assault, and 4) appellants' claims for tortious interference with business relationships.

9

On the claims for conversion, appellants presented no summary judgment evidence in response to Ramirez's motion for summary judgment and have not raised that issue on appeal. Consequently, summary judgment on that cause of action is not under review. *Clear Creek Basin Auth.*, 589 S.W.2d at 678-79; *Thompson*, 859 S.W.2d at 621. We overrule appellants' second point of error as it relates to Hefner's claims for conversion.

As to Urrutia's claims for false imprisonment and intentional infliction of emotional distress, Ramirez raised the affirmative defense of limitations. Appellants filed suit against appellees on August 28, 1992. Ramirez's motion for summary judgment incorporated excerpts from Urrutia's deposition in which she admitted that incidents alleged in the petition occurred no later than July of 1990. The statute of limitations for both false imprisonment and intentional infliction of emotional distress is two years. TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a) (Vernon 1986); *see also Bhalli v. Methodist Hosp.*, 896 S.W.2d 207, 211 (Tex. App.--Houston [1st Dist.] 1995, n.w.h.) (intentional infliction of emotional distress); *Sevenson v. Koutzarov*, 795 S.W.2d 313, 318-19 (Tex. App.--Houston [1st Dist.] 1990, writ denied) (false imprisonment).

Similarly, Ramirez's motion for summary judgment on Rodriguez's claims for assault was based on limitations and included excerpts from Rodriguez's deposition. Rodriguez also admitted that any assault occurred more than two years before appellants filed suit. *See Armstrong v. Armstrong*, 750 S.W.2d 45, 46 (Tex. App.--

10

Fort Worth 1988, writ denied) (citing TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a) for two-year statute of limitations on assault).

In response to both limitations arguments, appellants conceded that the incidents occurred more than two years before they filed suit. Nevertheless, appellants contended that Ramirez did not prove his entitlement to judgment as a matter of law because he failed to negate any hypothetical application of the discovery rule or tolling provisions. We disagree.

As movant for summary judgment based on limitations, Ramirez had the burden of establishing that limitations bars the actions as a matter of law. *See Zale Corp. v. Rosenbaum*, 520 S.W.2d 889, 891 (Tex. 1975). Ramirez negated application of the discovery rule by the deposition excerpts in which Urrutia and Rodriguez conceded that the alleged incidents occurred more than two years before they filed suit. Urrutia's and Rodriguez's discovery of the incidents that they allege in their petition is conclusively established by their deposition testimony.

Regarding tolling provisions, appellants did not raise the possible applicability of any specific suspension statute either in their response to Ramirez's limitations or in their petition. In *Zale*, the supreme court framed the movant's obligation to address tolling statutes as a contingent responsibility: "*Where the non-movant interposes a suspension statute* . . . the limitations defense is not conclusively established until the burden of negating the applicability of these issues." *Id.* (emphasis added). When neither the pleadings nor the response to the motion for summary judgment raise a specific suspension statute, a movant should not have to address the potential

11

applicability of every conceivable tolling provision. Accordingly, we overrule appellants' second point of error as it relates to Rodriguez's claims for assault and Urrutia's claims for false imprisonment and intentional infliction of emotional distress.

Under the final claim addressed in his motion for summary judgment, Ramirez asserted that appellants could not maintain their claims for tortious interference with business relationships. In support of this argument, Ramirez stated two separate grounds: 1) that he could not be sued as an employee of the companies involved, and 2) that appellants and United had not formed a contract susceptible to interference. Ramirez neither offered summary judgment proof to support these grounds for summary judgment nor cited any caselaw for these propositions. *But see Eloise Bauer & Assocs., Inc. v. Electronic Realty Assocs., Inc.*, 621 S.W.2d 200, 203-04 (Tex. App.--Texarkana 1981, writ ref'd n.r.e.) (even with conclusive proof of employee's good faith, employees' privilege to induce breach of contract does not extend to wrongful means); *Harshberger v. Reliable-Aire, Inc.*, 619 S.W.2d 478, 481 (Tex. Civ. App.--Corpus Christi 1981, writ dism'd) (claim for tortious interference with business relationships "may exist even if no contract is yet in existence"). We hold that the trial court erred in granting Ramirez's motion for summary judgment on appellants' claims against Ramirez for tortious interference with business relationships. We sustain appellants' second point of error as it relates to these claims.

We AFFIRM the trial court's summary judgment in favor of Ramirez on the following claims: 1) Hefner's claims for conversion; 2) Rodriguez's claims for assault;

12

and 3) Urrutia's claims for false imprisonment and intentional infliction of emotional distress.

We REVERSE the trial court's summary judgment on appellants' claims against Ramirez for tortious interference with business relationships and REMAND these claims to the trial court for further proceedings.

### Burns International, Inc.

By their third point of error, appellants contend that the trial court erred in granting Burns' motion for summary judgment.

Burns' motion for summary judgment challenged the following causes of action: 1) appellants' statutory employment discrimination claims; 2) appellants' negligence claims for physical or emotional harm arising from their employment with Burns; 3) appellants' claims for wrongful discharge; 4) Hefner's claims for conversion; 5) Rodriguez's claims for assaultive torts based on Ramirez's acts attributable to Burns; 6) Urrutia's claims for false imprisonment and intentional infliction of emotional distress based on Ramirez's acts attributable to Burns; 7) appellants' claims based on Ramirez's sexual misconduct for which Burns may be held liable; 8) appellants' claims that their employment policy manual was contractual in nature and for breach of that contract; and 9) appellants' claims for tortious interference with business relationships.

Like United, Burns challenged appellants' claims for civil conspiracy in a brief supporting its motion for summary judgment. We cannot affirm the trial court's judgment based on any grounds for summary judgment raised in Burns' brief.

*McConnell*, 858 S.W.2d at 339-41. We hold that the trial court erred in granting Burns' motion for summary judgment on appellants' claims against Burns for civil conspiracy. We sustain appellants' third point of error as it relates to these claims.

In their response to Burns' motion for summary judgment, appellants did not present contrary summary judgment evidence to rebut Burns' grounds for summary judgment on the following claims: 1) appellants' statutory employment discrimination claims; 2) appellants' negligence claims for physical or emotional harm arising from their employment with Burns; 3) appellants' claims for wrongful discharge; and 4) Hefner's claims for conversion. Furthermore, appellants' brief does not attack the legal sufficiency of these grounds on appeal. As a result, these claims are no longer subject to appeal. *Clear Creek Basin Auth.*, 589 S.W.2d at 678-79. Similarly, appellants conceded that Huerta brought no cause of action against Burns. Accordingly, we overrule appellants' third point of error as it relates to the following claims: 1) appellants' statutory employment discrimination claims; 2) appellants' negligence claims for physical or emotional harm arising from their employment with Burns; 3) appellants' claims for wrongful discharge; 4) Hefner's claims for conversion; and 5) Huerta's claims against Burns.

Burns asserted the statute of limitations against Rodriguez's claims for assaultive torts and Urrutia's claims for false imprisonment and intentional infliction of emotional distress. As proof of when the alleged incidents took place, Burns offered excerpts from Rodriguez's and Urrutia's depositions. These deposition excerpts show that the acts of assault, false imprisonment, and intentional infliction

**14**

of emotional distress all occurred more than two years before this suit was filed. We overrule appellants' third point of error as it relates to 1) Rodriguez's claims for assaultive torts based on Ramirez's acts attributable to Burns and 2) Urrutia's claims for false imprisonment and intentional infliction of emotional distress based on Ramirez's acts attributable to Burns.

Regarding all other claims against Burns based on Ramirez's sexual misconduct, Burns argued that it conclusively proved that Ramirez's acts were beyond the scope of his employment. By itself, however, such evidence is insufficient to establish Burns' right to summary judgment on all claims based on Ramirez's acts for which Burns may be held liable. Appellants petition asserted that Burns tolerated many instances of sexual harassment and often failed to discipline transgressors. Under a liberal construction of appellants' pleadings, Burns might be held liable for Ramirez's acts through its own negligence in Ramirez's hiring, supervision, retention, or assignment. *See Estate of Arrington v. Fields*, 578 S.W.2d 173, 177-79 (Tex. Civ. App.--Tyler 1979, writ ref'd n.r.e.). We find that Burns' summary judgment motion and evidence fail to resolve or even address this cause of action. Thus, we cannot affirm the trial court's judgment on the ground that Burns cannot be held liable for Ramirez's sexual misconduct. We hold that the trial court erred in granting Burns' motion for summary judgment on appellants' claims against Burns based on Ramirez's sexual misconduct. We sustain appellants' third point of error as it relates to these claims.

15

In response to appellants' contractual causes of action, Burns complained that appellants' pleadings were too vague and that appellants failed to offer sufficient evidence to raise a fact issue. Summary judgment cannot serve as a substitute for special exceptions as a remedy for vague pleadings. *Massey*, 652 S.W.2d at 933-34. Moreover, the entitlement to summary judgment is not measured by whether the combined "summary judgment proof *raises fact issues* with reference to the essential elements of a plaintiff's claim." *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex. 1970). Rather, the movant becomes entitled to summary judgment when such "proof *establishes as a matter of law that there is no genuine issue of fact* as to one or more of the essential elements of the plaintiff's cause." *Id.* The nonmovant need not offer contrary summary judgment proof until the movant first establishes its right to summary judgment and the nonmovant then seeks to avoid this right. *Clear Creek Basin Auth.*, 589 S.W.2d at 678-79; *Swilley v. Hughes*, 488 S.W.2d 64, 67 (Tex. 1972).

Burns offered no summary judgment proof to disprove appellants' claims that their employment policy manual was contractual in nature. It is true that employment policy manuals do not generally create contractual rights restricting the employment-at-will doctrine. *See, e.g., Salazar v. Amigos Del Valle, Inc.*, 754 S.W.2d 410, 413 (Tex. App.--Corpus Christi 1988, no writ); *Reynolds Mfg. Co. v. Mendoza*, 644 S.W.2d 536, 539 (Tex. App.--Corpus Christi 1982, no writ). However, under certain circumstances an employment policy manual can create contractual limitations on an employer's right to discharge an employee. *Wilhite v. H.E. Butt Co.*, 812 S.W.2d 1,

6 (Tex. App.--Corpus Christi 1991, no writ); *see also Federal Express v. Dutschmann*, 846 S.W.2d 282, 283 (Tex. 1993) (negating possible exception to general rule that policy manuals do not create contractual rights by reference to terms of the manual); *accord Aiello v. United Air Lines, Inc.*, 818 F.2d 1196, 1198 (5th Cir. 1987) (finding exception under Texas law to general rule that employment policies do not create contractual rights). The absence of evidence on this issue does not negate appellants' cause of action. Instead, this lack of evidence precludes summary judgment in favor of Burns on this claim. *Clear Creek Basin Auth.*, 589 S.W.2d at 678-79; *Swilley*, 488 S.W.2d at 67. We hold that the trial court erred in granting Burns' motion for summary judgment on appellants' claims against Burns that their employment policy manual was contractual in nature and for breach of that contract. We sustain appellants' third point of error as it relates to these claims.

The final cause of action that Burns challenged in its motion for summary judgment is appellants' claims for tortious interference with business relationships. Burns argued that it was privileged to comment on appellants' fitness for jobs with United and that appellants formed no contract with United that was susceptible to interference.

We find that Burns presented insufficient summary judgment evidence to support these arguments. We have no basis to determine whether Burns may have exceeded its privilege to discuss appellants' suitability for future employment. *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989) (privilege is affirmative defense requiring proof of good faith). Similarly, we must view evidence of the

17

surrounding circumstances to determine whether a prospective contract is capable of being interfered with. *Harshberger*, 619 S.W.2d at 481 (citing *Cooper v. Steen*, 318 S.W.2d 750, 757 (Tex. Civ. App.--Dallas 1958, no writ)).

Summary judgment was improper absent evidence addressing the claim that appellants would have enjoyed a reasonable expectation of employment with United if they had not filed sexual harassment complaints. Weaknesses in appellants' corroborating evidence have no effect on the propriety of summary judgment because Burns never established its preliminary entitlement to summary judgment. *Clear Creek Basin Auth.*, 589 S.W.2d at 678; *Swilley*, 488 S.W.2d at 67. Consequently, neither of Burns' grounds for summary judgment on appellants' claims for tortious interference will support the trial court's judgment. We hold that the trial court erred in granting Burns' motion for summary judgment on appellants' claims against Burns for tortious interference with business relationships. We sustain appellants' third point of error as it relates to these claims.

We AFFIRM the trial court's summary judgment in favor of Burns on the following claims: 1) appellants' statutory employment discrimination claims; 2) appellants' negligence claims for physical or emotional harm arising from their employment with Burns; 3) appellants' claims for wrongful discharge; 4) Hefner's claims for conversion; 5) Huerta's claims against Burns; 6) Rodriguez's claims for assaultive torts based on Ramirez's acts attributable to Burns; and 7) Urrutia's claims for false imprisonment and intentional infliction of emotional distress based on Ramirez's acts attributable to Burns.

We REVERSE the trial court's summary judgment on 1) appellants' claims against Burns for civil conspiracy, 2) appellants' claims against Burns based on Ramirez's sexual misconduct, 3) appellants' claims against Burns that their employment policy manual was contractual in nature and for breach of that contract, and 4) appellants' claims against Burns for tortious interference with business relationships and REMAND these claims to the trial court for further proceedings.

                                        FEDERICO G. HINOJOSA, JR.
                                        Justice

Opinion ordered not published.
TEX. R. APP. P. 90.

Opinion delivered and filed this
the 12th day of October, 1995.

19

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

CYNTHIA RODRIGUEZ, JOVITA A.      *
URRUTIA, BEATRIZ HUERTA and       *
ANTHONY HEFNER                       *
                                        *
VS.                                 *      CIVIL ACTION NO. B-98-085
                                        *
VICENTE RAMIREZ, BURNS          *
INTERNATIONAL, INC.,             *
UNITED INVESTIGATIVE SERVICES, and *
U.S. IMMIGRATION AND           *
NATURALIZATION SERVICE        *

## AFFIDAVIT OF JAMES AUSTGEN

James Austgen, being by me first duly sworn, deposes and says as follows:

1.    I am over twenty-one (21) years of age, am of sound mind, have never been convicted of a felony, and am competent to testify to the matters set forth below from personal knowledge or from records kept in the ordinary course of business.

2.    I am the District Manager for Burns International, Inc. ("Burns") and am responsible for all activities within my region.  In the late 1980's through September 1990,  my region included the Bayview Detention Center located in Cameron County, Texas.

3.    Burns lost the contract for providing security services at the Bayview Detention Center, effective September 1990, and United International Investigative Services ("United") thereafter provided security services at that facility.  Burns never tried to prevent Ms. Rodriguez, Ms. Urrutia, Mr. Hefner, or any of its other former employees from being hired by United and remaining employed at Bayview when United took over the contract.  Quite to the contrary, Burns had a direct financial interest in having United hire all of its former employees at Bayview,

PD2:112460.1


EXHIBIT
*B*

including the individuals who are plaintiffs in this case. If they were not hired by United to continue working at Bayview, Burns would suffer financially from the payment of unemployment compensation benefits. Consequently, when United took over the contract, I actively encouraged United to hire all of our former employees, including Ms. Rodriguez, Ms. Urrutia, and Mr. Hefner. However, United was apparently required by the INS to reduce the workforce at Bayview by about 40%. United made its own decisions as to who would and would not be retained, and Burns had nothing whatsoever to do with United's hiring decisions. A week or so before United actually assumed the contract, it hired some of Burns' former supervisors, including defendant Vicente Ramirez.

4. I have been informed that Mr. Hefner produced a letter in April 1998 to Burns' attorneys, a copy of which is attached as Exhibit B-1 to this Affidavit. I understand Mr. Hefner claims that this Affidavit supports his allegation that he was prevented from continuing his employment at Bayview when Burns lost the contract to United because of some blacklist. I know nothing about this alleged blacklist. However if this letter is accurate and there was a blacklist, the letter proves that Burns had nothing to do with making the blacklist. The final paragraph of the letter states that the blacklist "was made by Ruiz and Molinar." Ruiz and Molinar were INS representatives at Bayview. They have never been employees of Burns.

5. While Burns maintained the contract with the INS at Bayview, it had personnel policies contained in a handbook. These policies were intended to provide guidelines in dealing with employment issues which arose at Bayview. For example, the policies specifically prohibited offensive and uninvited sexual conduct by employees, and encouraged all persons to report such inappropriate conduct to Burns' management so that prompt remedial steps could be taken. The

PD2:112460.1                                           - 2 -

personnel policies were never intended to create a contractual relationship between Burns and its employees at Bayview. In fact, the handbook containing these policies had a specific statement disclaiming any such contractual relationship. The disclaimer stated very clearly:

> IT IS NOT THE INTENTION OF THE EMPLOYER, NOR SHALL THE ISSUANCE OF THIS HANDBOOK CREATE A CONTRACTUAL RELATIONSHIP.

True and correct copies of the disclaimers signed by the plaintiffs are attached to this Affidavit as Exhibits B-2 through B-4. I could not find the signed disclaimer for Mr. Hefner, but we had no personnel policies at Bayview which did not contain this specific disclaimer.

6.    Throughout all periods during which Burns provided security services at the Bayview Detention Center, Burns was a subscriber to workers' compensation insurance pursuant to the Texas Workers' Compensation Act, provided notice of its subscriber status to its employees in writing in conspicuous places throughout the workplace, and did so continuously. I have personally reviewed the files and work records of Cynthia Rodriguez, Jovita Urrutia, Beatriz Huerta and Anthony Hefner, and none of these employees within five (5) days of their hire, or at any time after their hire, submitted in writing an election whereby they waived coverage under the Texas Workers' Compensation Act.

JAMES AUSTGEN

- 3 -

STATE OF TEXAS

COUNTY OF BEXAR

BEFORE ME, the undersigned authority, on this ____ day of September, 1998, personally appeared, JAMES AUSTGEN, known to me to be the person whose name is subscribed to the above and foregoing Affidavit who, being by me first duly sworn, upon oath states and acknowledges to me that the facts set forth in the foregoing Affidavit are true and correct to the best of his knowledge, information and belief.

Given under my hand and seal of office this 30th day of September, 1998.



Notary Public In and For the State of Texas

*Mr. Vaz — gave me on Del. 9, 1990.*
*Eduardo Payan*
*Deportation Supervisor*

41

TONY

I hope that this information letter will help in your efforts to clean
up the illegal activities at the detention center at Bayview. I could
not help you when you asked me if I knew anything because I feared for
my job. The information that I will inform you about can all be proven
if the right people investigate. I will not sign this letter at this
time, i probably won't have to, the real truth will come out.

Your T.V. report states that the female detainees were/are having sex
with the officers in return for favors and to avoid deportation. You
were probably shooting kn the dark, the dirty fact is that you are right.
That involves both INS and Burns officers, in order to hide the truth,
the Burns officer females that helped the INS officers were not hired by
the new company. Mr Ruiz did all that he had in his power to hide the
fact that Charles Gantt was deeply involved with a detainee female. It
was a very well known fact that he would go to 35, have the guard on duty
call out the female and stay with her for hours, he brought he gifts
which we all know are against regulations. Dragon received a call from
Sgt. Gantt in control and left a message for the female detainee to call
him back and left a number, the number was for a telephone booth in
Brownsville, when the number was called Gantt answered. That is when
Mr. Rubio suspended him, Delia Gannt was the secretary and very very
good friend with Mr. Ruiz, because of their affair, Mr. Ruiz did not
allow Mr. Rubio to suspend Sgt. Gantt, instead he was paid for the days
that he was off duty and Mr. Rubio was chewed out by Mr.Ruiz. Mr.
Rubio has letters that the female witnesses wrote to complain about Sgt
Gantt, I saw them and made copies.

Mr. Molinar was seen taking a female by the name ofBlanca or Bianca into
his office after the females were in and after headcount. She was taken
to his office to clean, it is hard to clean when you are naked. These
things have happened, people are afraid to say anything or make reports

EXHIBIT
B-1

62

Remember the big scandal when Dragon, Dillaard, Cynthia Rodriguez, Huerta.
and Pete were removed as runners and deportaion helpers, trnasferred to
other shifts and accussed of selling the new arrival lists to the attorneys????????
As things turned out, the real criminal is Mr. Ruiz.  I was runner the
day that this fact was discovered, it was found that he was giving the
list to Attorney Roberto Arias, if you remember, Arias disappeared for
a long time after the discovery.  I understand that an investigation
by what INS calls OPR is pending, or maybe it was white washed to protect
Mr. Ruiz.  The rumor is that he was being paid for the lists, if you
think about it, it could be very profitable,  the lists should still be
available unless Mr. Ruiz had them destroyed.

I was very embarrassed on the Sunday that Mr. Ruiz was showing off to a
friend that he had on a tour, he hollered and threatened to fire us for
not standing when a superior enters a room.  Mr. Ruiz is a loud mouth
bully and show off, he needs to learn how to treat people.  He gets his
way only beaause he will fire you if you dont say what he wants to hear.

Mr. Ruiz is also guilty of sex during duty hours, the other female guards
knew that if they wanted something, they would send Norma Rangel to give
him a blow job, how else do you think she was selected for INS???????
If she is given a lie dectector test she will not be able to pass.  The
other females feel really grossed out thet  Mr. Ruiz is always making
crude sexist remarks to them, worse is the fact that he is fat like a frog.

The BLACK list does exist, it was made by Ruiz and Molinar, think about
it, the people that were not hired are for the most part good workers
they all had something in common, they all have information which is
harmful to Ruiz and Molinar, in a nutshell they know too much.  The
new company was duped by them.  If you want more information, i will
keep my eyes and ears open, if you want the letters about Gantt, place
an ad in the Bargain Book central edition I'll look for it.

GOOD LUCK

# RECORD OF ISSUE
## AND
## EMPLOYEE COMMITMENT

## HANDBOOK FOR SECURITY OFFICERS

I have received the *Handbook for Security Officers* and will read it during my first week of employment. I will read with special attention the section on disciplinary policy.

If there are any parts of the *Handbook* which I do not understand, I will ask my supervisor for assistance.

_____     3-15-89
Employee Signature            Date

_____     3/15/89
Witness Signature             Date

IT IS NOT THE INTENTION OF
THE EMPLOYER, NOR SHALL
THE ISSUANCE OF THIS
HANDBOOK CREATE A CON-
TRACTUAL RELATIONSHIP.

EXHIBIT

B-2

## RECORD OF ISSUE
### AND
### EMPLOYEE COMMITMENT

### HANDBOOK FOR SECURITY OFFICERS

I have received the *Handbook for Security Officers* and will read it during my first week of employment. I will read with special attention the section on disciplinary policy.

If there are any parts of the *Handbook* which I do not understand, I will ask my supervisor for assistance.

| | |
|---|---|
| Employee Signature | 6-17-88 |
| | Date |
| Witness Signature | 17 Jun 88 |
| | Date |

IT IS NOT THE INTENTION OF THE EMPLOYER, NOR SHALL THE ISSUANCE OF THIS HANDBOOK CREATE A CONTRACTUAL RELATIONSHIP.

55

EXHIBIT
*B-3*

②

RECORD OF ISSUE
AND
EMPLOYEE COMMITMENT

HANDBOOK FOR SECURITY OFFICERS

I have received the *Handbook for Security Officers* and will read it during my first week of employment. I will read with special attention the section on disciplinary policy.

If there are any parts of the *Handbook* which I do not understand, I will ask my supervisor for assistance.

_____        _____
Employee Signature                       Date

_____        _____
Witness Signature                           Date

EXHIBIT

*B-4*

CAUSE NO. 92-08-3575-C

CYNTHIA RODRIGUEZ, JOVITA A.    *  IN THE 197TH JUDICIAL
URRUTIA, BEATRIZ HUERTA AND    *
REVEREND ANTHONY HEFNER        *
                              *
VS.                           *  DISTRICT COURT OF
                              *
VICENTE RAMIREZ, BURNS        *
INTERNATIONAL, INC. AND       *
UNITED INVESTIGATIVE SERVICES  *  CAMERON COUNTY, TEXAS


VIDEOTAPED DEPOSITION OF CYNTHIA RODRIGUEZ
Taken January 12, 1993


A P P E A R A N C E S :


    MR. JIM SITGREAVES
    Attorney at Law
    2009-C Padre Boulevard
    South Padre Island, Texas  78597

        COUNSEL FOR THE PLAINTIFFS


    MR. MANUEL M. VELA
    Vela & Vela
    302 North First Street
    Harlingen, Texas  78550

        COUNSEL FOR VICENTE RAMIREZ


    MR. RAYMOND A. COWLEY
    Jarvis & Kittleman, P.C.
    4900-B North Tenth Street
    McAllen, Texas  78504

        COUNSEL FOR BURNS INTERNATIONAL, INC.


    MR. ROBERT WHITTINGTON
    Sanchez, Whittington & Janis
    100 North Expressway 83
    Brownsville, Texas  78521-2257

        COUNSEL FOR UNITED INVESTIGATIVE SERVICES

RECEIVE**EXHIBIT**
*C*
NG

COPY

P.O. Box 1270                           Ph. (210) 428-2778
                                       Fax (210) 425-7831

2

APPEARANCES\Continued

ALSO PRESENT:

    Ms. Jovita A. Urrutia, Plaintiff

    Mrs. Beatriz Huerta, Plaintiff

    Ms. Desiree Forbes, Videographer

A.   I don't know how they think.

Q.   Are you saying that as far as you know, then, their reason for not wanting -- for not recommending you for hire related solely to your performance on the job?

A.   I don't know.

Q.   You have no idea why they would not recommend you for hire is what you're saying?

A.   Correct.

Q.   You don't contend it was for any wrong reason, do you?

A.   If it was, I don't know what it was.

Q.   Do you contend that Burns had anything to do with your not being hired, say, by Wal-Mart or by any subsequent employer?

A.   No.

Q.   Are you asking in this lawsuit, ma'am, that -- that the Court put you back to work for Burns?

A.   I wouldn't want to go.

Q.   You wouldn't go if -- if -- if they offered you a job; am I right?

A.   Correct.

Q.   Following your employment with Burns, ma'am, did you ever file any type of charge of employment discrimination?

Q.   (By Mr. Cowley)   As far as you know sitting here today and the facts known to you, the reason why you may not have been recommended for hire by the subsequent employer was because of six write-ups in your file; am I correct?

A.   I don't know.

Q.   You're saying you don't know the reason; am I right?

A.   Correct.

Q.   It may have been this reason or some other reason?

A.   Correct.

Q.   Whatever the reason was, you don't know what it is?

A.   My complaint.

Q.   You believe that your complaint regarding Mr. Gant --

A.   Uh-huh.

Q.   I'm sorry?

A.   Yes.

Q.   -- was the reason why that you were not recommended for hire?

A.   Correct.

Q.   What facts do you have to support that allegation?   Is it only a guess?

A.    Could be.

Q.    As far as you know sitting here today, you're just guessing?

A.    It'd be a big guess.

Q.    Because you have no facts to support that; am I right?

A.    Correct.

Q.    Okay.  I'd like to show you what's been marked as Deposition Exhibit No. 12.  Can you tell us what that is?

A.    Charge of discrimination.

Q.    And is that your signature at the bottom?

A.    Yes, it is.

Q.    And I'd like to show you what's been marked as Deposition Exhibit No. 13.  Could you tell us what that is?

A.    It's from the employment office.

Q.    Does it say Texas Employment Commission somewhere on it?

A.    United States Equal Opportunity Employment Commission.

Q.    Do you recall ever seeing that before?

A.    No.

Q.    You're saying that you -- you never got any indication in writing of the outcome of your charge of



UNITED STATES EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
SAN ANTONIO DISTRICT OFFICE
5410 FREDERICKSBURG ROAD, SUITE 200
MOCKINGBIRD PLAZA II
SAN ANTONIO, TEXAS  78229-3555

AREA CODE 512
229-4810

RECEIVED
JUN - 3 1991

Charge No:   360 91 0218

Cynthia Rodriguez
2313 Shidler Street, Apt. 253
Brownsville, Texas   78570

**Charging Party**

Burns International Security Company
Rt. 3, Box 341
Los Fresnos, Texas   78566

**Respondent**

## DETERMINATION

Under the authority vested in me by the Commission, I issue
the following determination as to the merits of the subject
charge filed under Title VII of the Civil Rights Act of 1964,
as amended.

All requirements for coverage have been met.  Charging Party
alleged that she was discriminated against in violation of
Title VII in that she was subjected to unwelcomed sexual
advances because of her sex, female.

Examination of the evidence fails to show that Charging Party
was subjected to sexual advances.  Statements from witnesses
fail to show that Charging Party complained to Respondent or
to co-workers about sexual advances.                          *NOTE*

Based on this analysis, I have determined that the evidence
obtained during the investigation does not establish a
violation of the statute.

This determination and dismissal concludes the processing of
this charge.  This letter will be the only notice of dismissal
and the only notice of the Charging Party's right to sue by the
Commission.   THE CHARGING PARTY MAY ONLY PURSUE THIS MATTER
FURTHER BY FILING SUIT AGAINST THE RESPONDENT(S) NAMED IN THE

DEPOSITION
EXHIBIT
13
RODRIGUEZ

CHARGE IN FEDERAL DISTRICT COURT WITHIN 90 DAYS OF THE CHARGING
PARTY'S RECEIPT OF THIS LETTER.   Therefore, if a suit is not
filed within this 90 day period, the Charging Party's right to
sue will be lost.

On Behalf of the Commission:

May 30, 1991
_____
Date

Pedro Esquivel
District Director

Enclosure:   Information Sheet on Filing
             Suit in Federal District Court

CAUSE NO. 92-08-3575-C

CYNTHIA RODRIGUEZ, JOVITA A.     *   IN THE 197TH JUDICIAL
URRUTIA, BEATRIZ HUERTA AND      *
REVEREND ANTHONY HEFNER          *
                                 *
VS.                              *   DISTRICT COURT OF
                                 *
VICENTE RAMIREZ, BURNS           *
INTERNATIONAL, INC. AND          *
UNITED INVESTIGATIVE SERVICES    *   CAMERON COUNTY, TEXAS


VIDEOTAPED DEPOSITION OF JOVITA A. URRUTIA
Taken January 12, 1993


A P P E A R A N C E S :


        MR. JIM SITGREAVES
        Attorney at Law
        2009-C Padre Boulevard
        South Padre Island, Texas   78597

             COUNSEL FOR THE PLAINTIFFS


        MR. MANUEL M. VELA
        Vela & Vela
        302 North First Street
        Harlingen, Texas   78550

             COUNSEL FOR VICENTE RAMIREZ


        MR. RAYMOND A. COWLEY
        Jarvis & Kittleman, P.C.
        4900-B North Tenth Street
        McAllen, Texas   78504

             COUNSEL FOR BURNS INTERNATIONAL, INC.


        MR. ROBERT WHITTINGTON
        Sanchez, Whittington & Janis
        100 North Expressway 83
        Brownsville, Texas  78521-2257

             COUNSEL FOR UNITED INVESTIGATIVE SERVICES

RECEIVED JAN 2 8 1                    COPY

P.O. Box 1270                              Ph. (210) 428-2778

34

1  A.  Yes, sir.  To my knowledge, yes.

2  Q.  And the second time you worked for Burns, you

3  resigned; am I correct?

4  A.  Yes, sir.

5  Q.  Okay.  Have you sought employment since

6  leaving Burns the second time?

7  A.  Yes, I did.  At the time, I'm employed with

8  Wackenhut Security.

9  Q.  Where was the first place you applied after

10  leaving Burns the second time?

11  A.  Second time, I went back to UI -- to United to

12  the camp.

13  Q.  Did you apply there?

14  A.  Uh-huh.

15  Q.  Were you hired?

16  A.  No, sir.

17  Q.  Do you -- do you contend in this lawsuit there

18  was any reason why you weren't hired by United?

19  A.  I believe Mr. Ramirez had something to do with

20  it.

21  Q.  Vicente Ramirez?

22  A.  Yes, sir.

23  Q.  Okay.  Now, Mr. Ramirez went to work for

24  United; am I correct?

25  A.  Yes, sir.

1     Q.  So you're saying that during the time

2  Mr. Ramirez worked for United, you believe he kept you

3  from being hired?

4     A.  Yes, sir.

5     Q.  You don't contend that Burns kept you from

6  being hired by United, do you?

7     A.  No, sir.

8     Q.  Okay.  Where else did you apply after you

9  worked for Burns the second time?

10     A.  I applied again at Wal-Mart --

11     Q.  Were you hired?

12     A.  -- in Brownsville.  No, sir.

13     Q.  Where else did you apply?

14     A.  I applied at -- went back to Dillard's.

15     Q.  Were you hired?

16     A.  No, sir.

17     Q.  Where else did you apply?

18     A.  The County courthouse.

19     Q.  Where else?

20     A.  The school district.

21     Q.  Where else?

22     A.  And at -- with Wackenhut Security.

23     Q.  And is it your testimony you were hired by

24  Wackenhut?

25     A.  Yes, sir.



UNITED STATES EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
SAN ANTONIO DISTRICT OFFICE
5410 FREDERICKSBURG ROAD, SUITE 200
MOCKINGBIRD PLAZA II
SAN ANTONIO, TEXAS 78229-3555

AREA CODE 512
229-4810

Charge No:  360.91 0213

Jovita Urrutia
314 North Street (Rear)
Brownsville, Texas  78521

RECEIVED
JUN - 3 1991
Charging Party

Burns International Security Company
Rt. 3 Box 341
Los Fresnos, Texas  78566

Respondent

### DETERMINATION

Under the authority vested in me by the Commission, I issue
the following determination as to the merits of the subject
charge filed under Title VII of the Civil Rights Act of 1964,
as amended.

All requirements for coverage have been met.  Charging Party
alleged that she was discriminated against in violation of
Title VII in that she was subjected to sexual advances because
of her sex, female.

Examination of the evidence fails to show that Charging Party
was subjected to sexual advances.  Statements from witnesses
fail to show that Charging Party complained to Respondent or
to co-workers about sexual advances.

*NOTE*

Based on this analysis, I have determined that the evidence
obtained during the investigation does not establish a
violation of the statute.

This determination and dismissal concludes the processing of
this charge.  This letter will be the only notice of dismissal
and the only notice of the Charging Party's right to sue by the
Commission.  THE CHARGING PARTY MAY ONLY PURSUE THIS MATTER
FURTHER BY FILING SUIT AGAINST THE RESPONDENT(S) NAMED IN THE
CHARGE IN FEDERAL DISTRICT COURT WITHIN 90 DAYS OF THE CHARGING
PARTY'S RECEIPT OF THIS LETTER.  Therefore, if a suit is not
filed within this 90 day period, the Charging Party's right to
sue will be lost.

On Behalf of the Commission:

May 30, 1991
Date

Pedro Esquivel
District Director

DEPOSIT
EX:
4
URRU



Case 1:98-cv-00085   Document 8   Filed in TXSD on 10/06/1998   Page 69 of 93

360 91 0213

Enclosure:   Information Sheet on Filing
             Suit in Federal District Court

CAUSE NO. 92-08-3575-C

CYNTHIA RODRIGUEZ, JOVITA A.      *   IN THE 197TH JUDICIAL
URRUTIA, BEATRIZ HUERTA AND       *
REVEREND ANTHONY HEFNER           *
                                  *
VS.                               *   DISTRICT COURT OF
                                  *
VICENTE RAMIREZ, BURNS            *
INTERNATIONAL, INC. AND           *
UNITED INVESTIGATIVE SERVICES     *   CAMERON COUNTY, TEXAS


VIDEOTAPED DEPOSITION OF BEATRIZ HUERTA
Taken January 12, 1993


A P P E A R A N C E S :


    MR. JIM SITGREAVES
    Attorney at Law
    2009-C Padre Boulevard
    South Padre Island, Texas  78597

        COUNSEL FOR THE PLAINTIFFS


    MR. MANUEL M. VELA
    Vela & Vela
    302 North First Street
    Harlingen, Texas  78550

        COUNSEL FOR VICENTE RAMIREZ


    MR. RAYMOND A. COWLEY
    Jarvis & Kittleman, P.C.
    4900-B North Tenth Street
    McAllen, Texas  78504

        COUNSEL FOR BURNS INTERNATIONAL, INC.


    MR. ROBERT WHITTINGTON
    Sanchez, Whittington & Janis
    100 North Expressway 83
    Brownsville, Texas  78521-2257

        COUNSEL FOR UNITED INVESTIGATIVE SERVICES



EXHIBIT

*E*

COPY

RECEIVED JAN 2 6 1993

P.O. Box 1270
Harlingen, TX 78551

**VALLEY-WIDE
COURT REPORTING**

Ph. (210) 428-2776
Fax (210) 425-7831

2

APPEARANCES\Continued

ALSO PRESENT:

    Ms. Cynthia Rodriguez, Plaintiff

    Ms. Jovita A. Urrutia, Plaintiff

    Ms. Desiree Forbes, Videographer

P.O. Box 1270
Harlingen, TX 7855

VALLEY-WIDE
COURT REPORTING

Ph. (210) 428-2778
Fax (210) 425-7831

1    Q.   What is your rate of pay there?

2    A.   I think it's 5.50 an hour.

3    Q.   5.50?

4    A.   Yes.

5    Q.   How many hours do you work per week?

6    A.   40-plus.

7    Q.   Do you have employment benefits?

8    A.   Yes.

9    Q.   Have you ever been given a summary plan

10   description of what those benefits are?

11   A.   Yes.

12   Q.   Mrs. Huerta, do you contend in this lawsuit

13   that -- that Burns International Security Services had

14   anything at all to do with -- with your loss of

15   employment with United?

16   A.   Burns, no.

17   Q.   Okay.  Just as I did with Ms. Rodriguez,

18   Mrs. Huerta, I would like to ask you some questions

19   about allegations made in your lawsuit.  Just -- just

20   so I'm clear before we go on, you do not blame Burns

21   International Security Services for any loss of

22   employment you may have suffered; am I correct?

23   A.   No.

24   Q.   Pardon me?

25   A.   No.

P.O. Box 1270
Harlingen, TX 78551

VALLEY-WIDE
COURT REPORTING

Ph. (210) 428-2778
Fax (210) 425-7831

30

1     Q.   I'm not correct?

2     A.   Okay.

3     Q.   You -- you do not blame Burns International

4  Security Services for any loss of employment you may

5  have suffered; is that correct?

6     A.   No, Burns did not have nothing to do with my

7  loss of employment.

8     Q.   Okay.  Since we are making a record here and

9  -- and I want the record to be precise, am I correct

10 when I say to you that Burns had nothing to do --

11    A.   You are correct.

12    Q.   -- with your loss of employment?

13    A.   You are correct.

14    Q.   Okay.  Okay.  I'm going to read from your

15 lawsuit, Mrs. Huerta, in paragraph Roman numeral IV.

16 Plaintiff Beatriz Huerta began work at the Bayview

17 Detention Center in 1988 as a guard.  I would believe

18 that you say that's correct; am I right?

19    A.   Right.

20    Q.   Quoting now, During her employment at such

21 center, plaintiff observed many acts committed by male

22 guards and male supervisors which were patently

23 improper and also in violation of Detention Center

24 rules, end quote.  What are you referring to in your

25 lawsuit when you say that you observed many acts

P.O. Box 1270
Harlingen, TX 78551

**VALLEY-WIDE
COURT REPORTING**

Ph. (210) 428-2778
Fax (210) 425-7831

1   statement?

2       A.   One Immigration -- not a guard, Immigration

3   officer.

4       Q.   So there was never any employee of Burns that

5   -- that harassed you; is that correct?

6       A.   They would call me -- you know, tell me that I

7   was pretty, baby, this and that, but I wouldn't pay any

8   attention to them.

9       Q.   It's nothing you're complaining about in this

10  lawsuit; am I right?

11      A.   I -- only the Immigration officer that did

12  harass me.

13      Q.   Okay.  So with respect to this lawsuit, you're

14  not complaining about any harassment by any employee of

15  Burns; am I right?

16      A.   That is correct.

17      Q.   You're complaining about something done by

18  some Government employee?

19      A.   That is correct.

20      Q.   And who was that?

21      A.   His name -- his first initial was R, last name

22  was Chavez.

23      Q.   You don't know his first name?

24      A.   No.

25      Q.   But he was an employee of the Immigration

P.O. Box 1270
Harlingen, TX 78551

**VALLEY-WIDE
COURT REPORTING**

Ph. (210) 428-2778
Fax (210) 425-7831

48

1    service?

2        A.    That is correct.

3        Q.    And when did that harassment occur?

4        A.    The year was '89.  Month, I do not recall.

5        Q.    And in what way did Mr. Chavez harass you?

6        A.    I was at the control room.  He wanted me to

7    kiss him, and I told him no.  And I moved over to the

8    east side of the room where the monitor cameras were,

9    and he followed me over there.  And then I came over

10   here towards the TV monitors, and that's where he

11   corned me and held my -- held me by the arms and tried

12   to kiss me.  And that's when I ran behind the monitors

13   and out the door and called for my supervisor, which

14   was feeding time, so he was close by.

15       Q.    And who did you call?

16       A.    Adan Gonzalez.

17       Q.    And what, if anything, did you say to

18   Mr. Gonzalez?

19       A.    He asked me how come I wasn't at my post, and

20   I told him that Chavez had tried to kiss me and I had

21   run out of the control room.

22       Q.    After you reported it to Mr. Gonzalez, did the

23   -- did the incident ever occur again?

24       A.    No, it didn't occur again.

25       Q.    After that time, Mr. Chavez never attempted

P.O. Box 1270
Harlingen, TX 78551

**VALLEY·WIDE
COURT REPORTING**

Ph. (210) 428-2778
Fax (210) 425-7831

1    any other acts?

2        A.   After that incident or that day?

3        Q.   All right.  Tell us what happened after you

4    talked to Mr. Gonzalez.

5        A.   Mr. Chavez followed me out of the control

6    room, and he kept on saying, I'm sorry, Bea, I'm sorry,

7    Bea.  And Gonzalez told him to stay away from me, and

8    he sent me over towards the bullpen, which is a holding

9    area for the detainees.  And he told me to go to

10   Building 35 and stay there.

11       Q.   In other words, Mr. Gonzalez acted on your

12   behalf; am I right?

13       A.   Right.

14       Q.   And told Mr. Chavez not to do that again?

15       A.   To stay away from me.

16       Q.   And he separated you from Mr. Chavez; am I

17   correct?

18       A.   Right.

19       Q.   And after that, Mr. Chavez never attempted

20   anything again?

21       A.   No, he was very bitter because I had written a

22   report against him.

23       Q.   But in your mind, Mr. Gonzalez acted

24   appropriately in telling him not to do it again?

25       A.   Correct.

P.O. Box 1270
Harlingen, TX 78551

**VALLEY-WIDE
COURT REPORTING**

Ph. (210) 428-2778
Fax (210) 425-7831

50

1    Q.   And, in fact, it never occurred again; am I

2    correct?

3    A.   That's right.

4    Q.   And this was the only complaint of -- of

5    harassment that you ever made while you worked at the

6    facility?

7    A.   I also made harassment against a female that

8    was very bothersome towards me.

9    Q.   Okay.  Before we get to that one, ma'am, and

10   I'd like to hear about that, am I correct that only one

11   time were you sexually harassed by a man?

12   A.   By a male, yes.

13   Q.   And that was Mr. Chavez?

14   A.   Right.

15   Q.   And when you reported it to your supervisor,

16   your supervisor remedied that situation; am I correct?

17   A.   Remedied?  Let me tell you that I wrote the

18   report against him, Mr. --

19   Q.   Against Mr. Chavez?

20   A.   Mr. Chavez.

21   Q.   Okay.

22   A.   And I was afraid to go by myself, so I told

23   Rubio to go with me, and he went with me and we talked

24   to another Immigration supervisor by the name of George

25   Molina.

P.O. Box 1270
Harlingen, TX 78551

VALLEY-WIDE
COURT REPORTING

Ph. (210) 428-2778
Fax (210) 425-7831

1    Q.   In other words, so Adan told Mr. Chavez to

2  leave you alone; am I correct?

3    A.   That day, yes.

4    Q.   Okay.  And Rubio accompanied you to see an

5  Immigration supervisor?

6    A.   The following day, I believe, to talk to him

7  about the incident.

8    Q.   And to make sure it didn't happen again?

9    A.   Well, he told -- what Mr. Molina told me was

10  that he would have a talk with Chavez, but I had asked

11  if they were going to do an investigation.  And he

12  said, Well, if we get EEOC involved, it's going to get

13  you embarrassed, too, because they're going to

14  investigate you, too, and that he would take care of

15  it.

16    Q.   With respect to Captain Rubio, you asked

17  Mr. Rubio to go with you to that meeting; am I correct?

18    A.   Yes.

19    Q.   And he did so?

20    A.   Yes, he did.

21    Q.   On your behalf?

22    A.   On my behalf.

23    Q.   And you felt like he acted appropriately?

24    A.   He -- he accompanied me because I was nervous,

25  but he didn't -- he never said a word there at the

P.O. Box 1270
~~Harlingen, TX 78551~~

**VALLEY-WIDE
COURT REPORTING**

Ph. (210) 428-2778
Fax (210) 425-7831

1    office.

2              MR. COWLEY:   Excuse me.

3                   (A recess was taken.)

4         Q.   (By Mr. Cowley)   In other words, you asked

5    Mr. -- you reported the incident to Mr. Gonzalez; am I

6    right?

7         A.   Yes, sir.

8         Q.   And he told the individual, Mr. Chavez, not to

9    do it anymore, to leave you alone?

10        A.   To stay away from me that day.

11        Q.   He told you that day -- he told Mr. Chavez

12   that day to stay away from you?

13        A.   Yes, because he was following me trying to

14   apologize and apologize.

15        Q.   And you asked Captain Rubio to accompany you

16   to that meeting; am I right?

17        A.   Yes, that was the following day -- the

18   following day, I believe.

19        Q.   And he did so?

20        A.   Yes, he did.

21        Q.   So with respect to the Burns' employees that

22   you reported the harassment to, is it your testimony

23   that -- that they acted appropriately?

24        A.   Yes.

25        Q.   You're not complaining about the Burns'

53

1   employees with regard to that harassment; am I correct?

2      A.   They -- they didn't do anything to me.   They

3   -- they were helping me out.

4      Q.   And you're not complaining, then, about the

5   Burns' employees?   You're saying that they acted

6   appropriated?

7      A.   At that time, yes.

8      Q.   Okay.   It's says in your lawsuit one of the

9   male guards responded to such threat by laughingly

10  stating that an EEOC investigation would be more

11  embarrassing to plaintiff, end quote.   It wasn't a male

12  guard who said that, was it?

13     A.   No, that was Mr. Molina that told me that.

14     Q.   The Government employee?

15     A.   Yes, he's an Immigration supervisor.

16     Q.   It was not any employee of Burns who said

17  that?

18     A.   That is correct.

19     Q.   Okay.   Now, it says in your lawsuit that when

20  matters began to receive media attention, an INS

21  investigation was begun.   Is that a true statement?

22     A.   That is true.

23     Q.   When did the media attention occur?

24     A.   I don't know exactly what dates, but an office

25  from McAllen contacted me, Department of Internal

CAUSE NO. 92-08-3575-C

CYNTHIA RODRIGUEZ, JOVITA A. &ast; IN THE 197TH JUDICIAL
URRUTIA, BEATRIZ HUERTA AND &ast;
REVEREND ANTHONY HEFNER &ast;
&ast;
VS. &ast; DISTRICT COURT OF
&ast;
VICENTE RAMIREZ, BURNS &ast;
INTERNATIONAL, INC. AND &ast;
UNITED INVESTIGATIVE SERVICES &ast; CAMERON COUNTY, TEXAS

DEPOSITION OF ANTHONY L. HEFNER
Taken February 2, 1993

A P P E A R A N C E S:

MR. JIM SITGREAVES
Attorney at Law
2009-C Padre Boulevard
South Padre Island, Texas  78597

COUNSEL FOR THE PLAINTIFFS

MR. RAYMOND A. COWLEY
Jarvis & Kittleman, P.C.
4900-B North Tenth Street
McAllen, Texas  78504

COUNSEL FOR BURNS INTERNATIONAL, INC.

MR. ROBERT WHITTINGTON
Sanchez, Whittington & Janis
100 North Expressway 83
Brownsville, Texas  78521-2257

COUNSEL FOR UNITED INVESTIGATIVE SERVICES



EXHIBIT
1
F

COPY

P.O. Box 1270

Ph. (210) 428-2778
Fax (210) 425-7831

14.    There are certain documents that are referred to in the text of this Affidavit, true and correct copies of which are annexed hereto and incorporated by reference herein. Relative to such documents, I state that I am the custodian of the records of UNITED INTERNATIONAL INVESTIGATIVE SERVICES, and attached hereto are __2__ pages of records of UNITED. Such records are kept by UNITED in the regular course of business, and, it was in the regular course of business of UNITED for an employer or representative of UNITED, with knowledge of the act, event, condition, opinion, or diagnosis recorded, to make the records or transmit information thereof to be included in such records; the records were made at or near the time or reasonably soon thereafter. The records attached hereto are the original or exact duplicates of the original.

FURTHER AFFIANT SAYETH NOT.

UNITED INTERNATIONAL
INVESTIGATIVE SERVICES, INC.

BY: _____
William Guidice, President

SUBSCRIBED AND SWORN TO BEFORE ME on the 16th day of October 1996 to certify which witness my hand and official seal.

_Angela S. Baker_
Notary Public in and for
The State Of California and
The County of Orange

Printed Name: Angela S. Baker
My Commission Expires: March 26, 1999

ANGELA S. BAKER
COMM. #1064016
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
My Comm. Expires March 26, 1999

EXHIBIT __4__ PAGE __4__

6

1   Mr. Bergendahl?

2       A.   I'm an Immigration detention officer here in

3   Port Isabel.

4       Q.   Who is your employer?

5       A.   The U.S. Government.

6       Q.   And what is it that you do for the Government?

7       A.   I work detention and deportation of illegal

8   aliens.

9       Q.   When did you begin working for the Immigration

10  Service?

11      A.   Approximately two years ago.

12      Q.   Where did you work prior to working for the

13  Immigration Service?

14      A.   I worked with United International

15  Investigative Services.

16      Q.   And how long were you with them?

17      A.   Approximately about a year and a month.

18      Q.   And what roughly would have -- from when to

19  when?

20      A.   From -- I believe it was when they took over

21  the contract there at the Port Isabel processing

22  center, which was, I believe, October or September.

23      Q.   Of 1990?

24      A.   Of '90 until November of '91.

25      Q.   Where did you work prior to working for

1  facts about this case.  I'd like to ask you,

2  Mr. Bergendahl, do you know a plaintiff by the name of

3  Cynthia Rodriguez?

4      A.   I know who she is.

5      Q.   Do you know Jovita Urrutia, one of the other

6  plaintiffs?

7      A.   Yes, sir, I do.

8      Q.   Do you know Beatriz Huerta?

9      A.   Yes, sir.

10     Q.   And do you know Anthony Hefner?

11     A.   Yes, sir.

12     Q.   Mr. Bergendahl, I'd like to ask you, sir,

13  during the time that you worked for Burns, did Cynthia

14  Rodriguez ever complain to you about any sexual or

15  offensive conduct directed at her by Vicente Ramirez?

16     A.   It was never brought to my attention,

17  nothing -- nothing -- nothing related to sexual

18  harassment, and that was a serious -- a very serious

19  matter.  If it would have been brought to my attention,

20  I would have followed up immediately on it.

21     Q.   Did Cynthia Rodriguez ever in any fashion make

22  you aware of any kind of sexual misconduct on the part

23  of Vicente Ramirez?

24     A.   No, sir.

25     Q.   Do you know Vicente Ramirez?

P.O. Box 1270
Harlingen, TX 78551

**VALLEY-WIDE
COURT REPORTING**

Ph. (210) 428-2778
Fax (210) 425-7831

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| CYNTHIA RODRIGUEZ | § | |
| JOVITA A. URRUTIA | § | |
| BEATRIZ HUERTA AND | § | |
| REVEREND ANTHONY HEFNER | § | |
| | § | CIVIL ACTION NO. B-98-085 |
| VS. | § | |
| | § | |
| VICENTE RAMIREZ, BURNS | § | |
| INTERNATIONAL, INC. | § | |
| UNITED INVESTIGATIVE SERVICES, | § | |
| and U.S. IMMIGRATION AND | § | |
| NATURALIZATION SERVICE | § | |

## ORDER SETTING HEARING ON
## BURNS' MOTION FOR SUMMARY JUDGMENT

On this the _____ day of _____, 1998, came on to be considered Defendant Burns International, Inc.'s Motion for Summary Judgment, and the Court after considering same, is of the opinion that said Motion should be set for hearing; it is therefore

ORDERED, ADJUDGED AND DECREED that Defendant Burns International, Inc.'s Motion for Summary Judgment be and the same is hereby set for hearing on the _____ day of _____, 1998 at _____ o'clock ____.m.

SIGNED FOR ENTRY on this the _____ day of _____, 1998.


_____
JUDGE PRESIDING

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

CYNTHIA RODRIGUEZ, JOVITA A.  *
URRUTIA, BEATRIZ HUERTA and  *
ANTHONY HEFNER      *
              *
VS.            *  CIVIL ACTION NO. B-98-085
              *
VICENTE RAMIREZ, BURNS   *
INTERNATIONAL, INC.,     *
UNITED INVESTIGATIVE SERVICES, and *
U.S. IMMIGRATION AND    *
NATURALIZATION SERVICE   *

## ORDER

   The Court, having considered Burns' Motion for Summary Judgment, is of the opinion that the Motion should be granted.  It is, therefore,

   ORDERED, ADJUDGED AND DECREED that plaintiffs' remaining claims against Burns are dismissed with prejudice.

   Signed this ____ day of _____, 1998.


            _____
            UNITED STATES DISTRICT JUDGE

PD2:167092.1

CAUSE NO. 92-08-3575-C

CYNTHIA RODRIGUEZ, JOVITA A.      *   IN THE 197TH JUDICIAL
URRUTIA, BEATRIZ HUERTA AND       *
REVEREND ANTHONY HEFNER           *
                                  *
VS.                               *   DISTRICT COURT OF
                                  *
VICENTE RAMIREZ, BURNS            *
INTERNATIONAL, INC. AND           *
UNITED INVESTIGATIVE SERVICES     *   CAMERON COUNTY, TEXAS


DEPOSITION OF HOWARD BERGENDAHL
Taken March 17, 1993


A P P E A R A N C E S:

    MR. DENIS DOWNY
    Attorney at Law
    1185 Farm Road 802
    Brownsville, Texas   78520

        COUNSEL FOR PLAINTIFFS


    MR. RAYMOND A. COWLEY
    Jarvis & Kittleman, P.C.
    4900-B North Tenth Street
    McAllen, Texas   78504

        COUNSEL FOR BURNS INTERNATIONAL, INC.


    MR. ROBERT WHITTINGTON
    Sanchez, Whittington & Janis
    100 North Expressway 83
    Brownsville, Texas   78521-2257

        COUNSEL FOR UNITED INVESTIGATIVE SERVICES



EXHIBIT

_H_

ORIGINAL

P.O. Box 1270
Harlingen, TX 78551

VALLEY-WIDE
COURT REPORTING

Ph. (210) 428-2778
Fax (210) 425-7831

1    you went through every time when a contract was changed

2    out there?

3         A.   No, no, not every time, no.

4         Q.   Explain to me what other kinds of procedures

5    you would have gone through.

6         A.   The other procedures would be we'd just go

7    ahead and fill out an application there at the -- at

8    the Bayview Detention Center, or -- or they'd come in

9    with a new security company -- come in there, fit us up

10   with uniforms and things of this nature.  And they tell

11   us, Well, you know, you've got a good record here, and

12   we want you.  We don't want to be bringing in

13   inexperienced people into the camp.  We want

14   experienced people here, and so you got a good work

15   record and -- and we want you.

16             THE REPORTER:  Excuse me.  I need to

17        change tapes.

18             MR. WHITTINGTON:  Sure.

19        Q.   (By Mr. Whittington)  Would you agree,

20   Reverend Hefner, that United had the right to hire or

21   not hire any person that they wished to?

22        A.   I believe that we all have a -- a right to

23   hire, yes.

24        Q.   In other words, they had the right to hire or

25   not hire persons to work for them at the INS Detention

1  Center?

2      A.   Correct.

3      Q.   For any reason?

4      A.   For just reasons, yes.

5      Q.   Okay.  Are you contending that the reasons

6  they decided not to hire you are unjust reasons?

7      A.   Yes, I believe they are unjust reasons.

8      Q.   And why are they unjust?

9      A.   Because of the -- the -- because of the -- I

10 believe the bad report that was turned in and my name

11 was placed on a blacklist.

12     Q.   That's not anything that United did?

13     A.   Well, no, it's nothing United did, but --

14     Q.   They -- they were simply relying on

15 information supplied to them by Burns' employees?

16     A.   Right.  Well, they were Burns' employees for

17 up until about four days before this -- before United

18 International came in.  Then they became United

19 International employees even though they weren't in the

20 camp.

21     Q.   Are you saying that United didn't have the

22 right to rely on information supplied that would

23 indicate -- that they based their decision on not to

24 hire?

25     A.   Maybe -- I know at the time that they -- Rubio

1    Q.   Do you have the copy of any decision that was

2  rendered by the EEOC?

3    A.   Not in my possession, no.

4    Q.   Was one sent to you?

5    A.   Yes, I believe, you know, I did receive them.

6    Q.   Okay.  What did you do with them?

7    A.   I'll -- I probably misplaced it.  It just

8  stated that there was -- they found no fault.

9    Q.   Would you agree that you never had an

10  employee/employer relationship with United?

11    A.   Employee or employer?

12    Q.   Employee/employer relationship with United?

13    A.   No, I never.

14    Q.   You never did?

15    A.   Never -- no, I never worked for them.  I was

16  -- had the impression I was going to be hired, yes, but

17  not -- not work for them.  I never received a paycheck

18  from them or worked.

19    Q.   Okay.  And, in fact, I take it that your claim

20  for unemployment compensation showed your last employer

21  as Burns --

22    A.   Correct.

23    Q.    -- and not United?  Do you have any personal

24  knowledge of any wrongful conduct by United or

25  employees of United after they took over the contract?

P.O. Box 1270
Harlingen, TX 78551

**VALLEY-WIDE
COURT REPORTING**

Ph. (210) 428-2778
Fax (210) 425-7831

CAUSE NO. 92-08-3575-C

CYNTHIA RODRIGUEZ,                           IN THE 197TH JUDICIAL
JOVITA A. URRUTIA,
BEATRIZ HUERTA and
REVEREND ANTHONY HEFNER,
             Plaintiffs,

vs.                                          DISTRICT COURT OF

VICENTE RAMIREZ, BURNS
INTERNATIONAL, INC., and
UNITED INTERNATIONAL
INVESTIGATIVE SERVICES,
             Defendants              CAMERON COUNTY, TEXAS

## AFFIDAVIT OF WILLIAM GUIDICE

STATE OF CALIFORNIA

COUNTY OF ORANGE

        BEFORE ME, the undersigned authority, on this day personally appeared WILLIAM GUIDICE, known to me, who, being by me duly sworn, deposed and said on his oath that:

1.    I am of the age of majority, of sound mind, and capable of making this Affidavit.

2.    I am personally acquainted with the facts stated in this Affidavit.

3.    I submit this affidavit in support of the pending Motion For Summary Judgment Of Defendant UNITED INTERNATIONAL INVESTIGATIVE SERVICES.

EXHIBIT __4__ PAGE __1__

EXHIBIT
G

4.  ·I am the President and Chief Executive Officer of one of the Defendants in this proceedings, UNITED INTERNATIONAL INVESTIGATIVE SERVICES, and am authorized to act on behalf of said California business corporation, including but not limited to executing this Affidavit.

5.  With the exception of BEATRIZ HUERTA, none of the four (4) Plaintiffs in this proceeding ever worked for UNITED, and this was admitted under oath (in a deposition). (See attached deposition excerpts.)

6.  As to the claims of JOVITA URRUTIA and ANTHONY HEFNER that they were told by a "Mr. Pierce" that they were hired, suffice it to say that Mr. Pierce is not authorized to hire or fire any employees of UNITED, and it is specifically denied that he "offered" anything more than the opportunity to submit an application for employment, pursuant to UNITED's hiring policy.

7.  Anyone hired to work for UNITED at the Bayview Detention Center operated by the Immigration and Naturalization Service of the United States of America was interviewed by me, pursuant to applications submitted to me for review, it being made clear that all applications would be reviewed but not necessarily accepted. All decisions by UNITED not to hire persons were solely UNITED's decision based on the applications submitted and on my interviews with the prospective employees and were in no way influenced by any information or recommendation of BURNS. In fact, BURNS supplied UNITED with little, if any, information regarding their employees and did not supply UNITED with reports of the complaints of alleged wrongful conduct and/or alleged sexual harassment allegedly made by one or more of the Plaintiffs. UNITED therefore could not and did not base its decision to hire or not hire on the existence of such complaints, if any.

8.  No offer of employment was extended to any of the Plaintiffs, except for BEATRIZ HUERTA, and no commitment of employment was made to any of the Plaintiffs, except for BEATRIZ HUERTA.

EXHIBIT ___4___ PAGE ___2___

9.   It is my understanding that the former employer (one of the other Defendants, BURNS INTERNATIONAL, INC.) had hired 170 people for the said facility, but pursuant to government "cut-backs," the Immigration and Naturalization Services directed UNITED, pursuant to a contract, that only 103 "employees" could be "re-hired" or "hired," indicating that approximately 70 people would have to be, in effect, "laid-off."

10.   I presume that the Plaintiffs, or similarly-situated individuals, who believe that they were "fired," were the victims of governmentally sanctioned "lay-offs" because of budget restrictions.

11.   Once the said contract with the Service was "assumed" by UNITED, it appeared that none of the employees had previously received health insurance, although current employees of UNITED -- after an insurer could be retained -- could receive health insurance.

12.   Thus, there was never a deduction for health insurance from the base wage; there was a "health and welfare allowance" under the contract with the Service for employees, which the employer could apply to a pension or disburse in cash.

13.   In that health insurance was not immediately available for the employees, such employees (such as BEATRIZ HUERTA), were paid in cash in lieu of such insurance. Attached hereto and incorporated by reference is a true and correct copy of the check paid to Plaintiff HUERTA representing her "health and welfare allowance" due to her under the contract.

EXHIBIT ___4___ PAGE ___3___