21

United States District Court
Southern District of Texas
FILED

APR 0 1 1999

Michael N. Milby
Clerk of Court

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

CYNTHIA RODRIGUEZ, JOVITA A.　　*
URRUTIA, BEATRIZ HUERTA and　　 *
ANTHONY HEFNER　　　　　　　　　 *
　　　　　　　　　　　　　　　　　 *
VS.　　　　　　　　　　　　　　　 *　　　CIVIL ACTION NO. B-98-085
　　　　　　　　　　　　　　　　　 *
VICENTE RAMIREZ, BURNS　　　　　 *
INTERNATIONAL, INC.,　　　　　　　*
UNITED INVESTIGATIVE SERVICES, and *
U.S. IMMIGRATION AND　　　　　　　*
NATURALIZATION SERVICE　　　　　　*

**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

**STATEMENT OF THE CASE**

I.　　**Nature of Case and Procedural History**

　　　This case was originally filed in state court in August 1992. Plaintiffs asserted various theories of recovery based on allegations of sexual harassment and retaliation in connection with their former employment at the Bayview Detention Center.

　　　In May 1993, the state district court granted motions for summary judgment filed by the defendants and dismissed all of the plaintiffs' claims with prejudice. Motions for new trial were denied, and plaintiffs subsequently appealed.

　　　On October 12, 1995, the state court of appeals issued its opinion affirming summary judgment on most of the plaintiffs' claims. As to Vicente Ramirez ("Ramirez"), the court affirmed summary judgment on all but one of the claims or theories which the plaintiffs had

asserted. Specifically, the court remanded only plaintiffs' claim of tortious interference with business relations. *See* Exhibit A at 12-13.[1]

Plaintiffs subsequently amended their petition to assert a conspiracy theory against Ramirez as well. (Second Amended Petition ¶XII). Thus, the only remaining claims or theories against Ramirez are for tortuous interference with business relations and conspiracy.[2]

These two remaining claims are based on the same factual allegations. Specifically, plaintiffs allege that Ramirez gave bad employment references concerning them to a prospective employer in retaliation for having reported and opposed alleged sexual harassment. (Second Amended Petition ¶s VII, VIII, XII and XIII)

## II.   FACTUAL BACKGROUND RELEVANT TO REMAINING CLAIMS

Plaintiffs previously worked as security guards for defendant Burns at the INS Bayview Detention Center. Burns' contract with the INS expired on September 27, 1990, at which time the contract was awarded by the INS to defendant United International Investigative Services ("United"). Plaintiffs allege they were initially hired by United, but then "blacklisted" from continued employment in retaliation for prior complaints of sexual harassment.

Although this case has been pending for over six years, plaintiffs have not come forward with one piece of evidence supporting their allegations against Ramirez. Indeed, documents produced by plaintiffs in April 1998 indicate that any such blacklist was prepared by INS officials, **NOT** Ramirez. Plaintiff Hefner produced a letter allegedly given to him on October 9, 1990,

---

[1] For the Court's convenience, a copy of the decision of the state court of appeals is attached as Exhibit A to this Memorandum.

[2] These remaining claims are asserted only on behalf of Rodriguez, Urrutia and Hefner. (*See* Second Amended Petition ¶s XII-XIII) Plaintiff Huerta has no remaining claim against Ramirez.

approximately two weeks after United took over the contract at Bayview. The letter states: "The

BLACK list does exist, it was made by Ruiz and Molinar . . . ." Ruiz and Molinar were INS

officials, and the letter says nothing about Ramirez.[3] Thus, plaintiffs' own documents prove that

Ramirez had nothing to do with any alleged blacklist.

### ARGUMENT

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is

proper if there is no genuine issue as to any material fact, and the moving party is entitled to

judgment as a matter of law. The Supreme Court has interpreted this rule to <u>mandate</u> the entry

of summary judgment against a party who is unable, after an adequate time for discovery, to

establish the existence of any element essential to her claim and on which she would bear the

burden of proof at trial. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552-

53 (1986).

Ramirez is entitled to summary judgment for two independent reasons. First, plaintiffs'

claims or theories of recovery are premised upon allegations of retaliation for having complained

of sexual harassment. The federal and state civil rights statutes provide the exclusive remedies

for this type of claim, and plaintiffs cannot pursue these claims under general tort theories.

Second, despite having had ample time for discovery, plaintiffs have absolutely no

evidence that Ramirez had anything to do with any alleged blacklist. Indeed, the only evidence

they have produced shows that the alleged blacklist was prepared (if at all) by the INS, not

Ramirez.

---

[3] The letter has been already been filed with the Court with Burn's Motion for Summary
Judgment. (*See* Affidavit of James Austgen) A copy of the letter is attached to this Motion as
Exhibit B for the Court's convenience.

## I.    Plaintiffs' Common Law Claims or Theories of Recovery Are Preempted and Governed Exclusively by Federal and State Civil Rights Statutes.

Plaintiffs' remaining claims are premised upon the factual allegations that Ramirez gave bad employment references concerning them to United in retaliation for having reported and opposed alleged sexual harassment.  Plaintiffs further allege that such actions constitute a "violation of State and federal law." (*See* Second Amended Petition ¶s VII, VIII, XII, and XIII)

If their allegations were true, plaintiffs would have claims and remedies under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., and the Texas Commission on Human Rights Act ("TCHRA").  Both Title VII and the TCHRA strictly prohibit retaliation for opposing workplace harassment.  42 U.S.C. § 2000e-3(a) (making it unlawful to retaliate against employees or applicants because they have opposed unlawful employment practices); Tex. Lab. Code Ann. § 21.055 (West 1998) (same under TCHRA).

These federal and state civil rights statutes specifically prohibit the very conduct about which plaintiffs complain here.  In Robinson v. Shell Oil Co., 117 S.Ct. 843 (1997) the United States Supreme Court, in a unanimous decision, held that the prohibition against unlawful retaliation contained in Title VII is quite broad and prohibits negative job references about former employees in retaliation for having previously opposed unlawful discrimination.  Thus, the claims which plaintiffs purport to assert here clearly fall within the protections of Title VII and the TCHRA.

However, prior to removal of this case, the state district court granted summary judgment on all of plaintiffs' state and federal statutory claims.  The summary judgment on those claims was affirmed by the court of appeals.  (*See* Exhibit A at 14)  Those claims are therefore final, and plaintiffs cannot resurrect them through general tort theories.

- 4 -

Several courts have held that the state and federal civil rights statutes create the exclusive remedies for claims of discrimination and retaliation, and plaintiffs cannot avoid the procedures and remedies under these statutes by recasting their claims under common law theories.

The state court of appeals in Austin addressed this very issue in <u>Stinnett v. Williamson County Sheriff's Department</u>, 858 S.W. 2d 573 (Tex. App.--Austin 1993, *writ denied*). The plaintiff had complained of discrimination and was subsequently terminated by his employer. He sued his employer alleging unlawful retaliation, but seeking remedies under legal theories other than the TCHRA. The court of appeals held specifically that the TCHRA was created to provide the exclusive remedy for such a claim:

> The Human Rights Act created a comprehensive administrative review system to accomplish its purposes. *Schroeder*, 813 S.W. 2d at 485-86. We conclude that by providing a remedy for retaliation in the Human Rights Act, the legislature intended to create an <u>exclusive remedy under the terms of that statute</u>.

858 S.W. 2d at 577 (emphasis added).

The state court of appeals in Amarillo reached the same result in claims alleging sexual harassment and retaliation similar to those asserted by the plaintiffs here. In <u>Vincent v. West Texas State University</u>, 895 S.W. 2d 469 (Tex. App.--Amarillo 1995, *no writ*), the plaintiff brought claims of sexual harassment and retaliation, and just like the plaintiffs here, she sought to avoid the procedures and remedies set forth in the civil rights statutes by asserting common law claims. The court went through a detailed analysis of how the TCHRA and Title VII establish mandatory administrative procedures for pursuing claims of harassment, discrimination and retaliation. The court then reasoned that to allow a plaintiff to assert such claims under common law theories would "eviscerat[e] the comprehensive administrative scheme established by the [T]CHRA, a result which this court will not condone." 895 S.W. 2d at 474. In affirming

- 5 -

summary judgment, the court stated that the plaintiff's claims "involved retaliation for her reporting sexually harassing activity. The [T]CHRA proscribes such retaliation and, in doing so, preempts suit under related theories." 895 S.W. 2d at 474.

The federal courts in Texas have also recognized that Title VII and the TCHRA preempt common law claims falling under the scope of those statutes. In <u>Cannizzaro v. Neiman Marcus, Inc.</u>, 979 F.Supp. 465 (N.D. Tex. 1997), the plaintiff alleged claims of sex and disability discrimination. Just as the plaintiffs here, the plaintiff in <u>Cannizzaro</u> attempted to assert common law theories of recovery. The court granted summary judgment, finding that such claims were "preempted by the Texas Commission on Human Rights Act." 979 F.Supp. at 478.

The court in <u>Cook v. Fidelity Investments</u>, 908 F.Supp. 438 (N.D. Tex. 1995), reached the same result. In <u>Cook</u>, the plaintiff asserted claims of racial discrimination under the civil rights statutes and common law theories. In granting summary judgment, the court found that the common law theories fell within the scope of the federal and state civil rights statutes and stated: "The TCHRA provides the exclusive state-law means for redress of employment discrimination and preempts claims for discrimination brought under other state-law theories." 908 F.Supp. at 442.

The Texas Supreme Court has recently confirmed these decisions and held that plaintiffs cannot pursue claims of unlawful retaliation based upon common law theories. In <u>Austin v. HealthTrust, Inc.</u>, 967 S.W. 2d 400 (Tex. 1998), the plaintiff was terminated from her job after she reported alleged unlawful and unethical conduct of another employee. Just like the plaintiffs in the present case, the plaintiff in <u>Austin</u> attempted to pursue claims of retaliatory discharge under common law theories. In affirming summary judgment, the Supreme Court reasoned that the legislature has enacted numerous statutes prohibiting employers from retaliating against

persons for opposing unlawful practices in the workplace, and those statutes provide the exclusive

procedures and remedies to persons alleging claims of retaliation.  The court held that plaintiffs

cannot bypass the procedures and remedies under the statutes by asserting their claims under

common law theories, as such as result would thwart the purposes underlying the statutes.  The

Supreme Court reasoned:

> In enacting statutes that prohibit certain conduct in the
> employment area, the legislature has carefully balanced competing
> interests and policies.  This has resulted in statutes not only with
> diverse protections, but also with widely divergent remedies and
> varying procedural requirements. . . .
>
> . . . . Were we to create a broad-based whistleblower cause
> of action, it would in large part eviscerate the specific measures the
> legislature has already adopted.

967 S.W. 2d at 403.  For these same reasons, the plaintiffs' present claims of retaliation asserted

under common law theories should be dismissed.

In summary, the common law tort theories which plaintiffs purport to assert fall squarely

within the scope of Title VII and the TCHRA.  These federal and state civil rights statutes provide

the exclusive procedures and remedies for such claims and preempt the claims plaintiffs purport

to assert here.  Thus, Ramirez is entitled to summary judgment on the remaining claims in this

action.

## II.    Plaintiffs' Own Evidence Disproves Their Allegations Against Ramirez.

Even if their claims were not preempted by the civil rights statutes, plaintiffs have no

evidence to support their allegations that Ramirez gave them bad references because they had

complained of harassment and, thereby, caused United to terminate their employment at Bayview.

To the contrary, the very documents upon which plaintiffs rely do not even mention Ramirez, and

specifically state that the alleged blacklist was prepared by INS officials.

- 7 -

Cil4PDF - www.fasiss.com

This case has been pending for over six years, and plaintiffs have come forward with nothing but their speculation and subjective belief that Ramirez was somehow responsible for the termination of their employment at Bayview. The Fifth Circuit has held on numerous occasions that a plaintiff's subjective belief about the reasons for her termination from employment is not competent evidence and, therefore, cannot preclude summary judgment. *See, e.g.*, Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996); Ray v. Tandem Computers, Inc., 63 F.3d 429, 435 (5th Cir. 1995).

The United States Supreme Court has squarely held that rule 56(c) of the federal Rules of Civil Procedure mandates the entry of summary judgment against a party who is unable, after an adequate time for discovery, to establish the existence of any element essential to her claim and on which she would bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322-23, 106 S.Ct. at 2552-53. The Fifth Circuit has also stressed the importance of the summary judgment procedure in cases such as this where, "after ample time for discovery, the closet of evidence [for the nonmoving party] is bear." Fontenot v. UpJohn Co., 780 F.2d 1190, 1197 (5th Cir. 1986). In affirming summary judgment for the defendant, the Fifth Circuit in Fontenot stated: "Summary judgment reinforces the purpose of the Rules, to achieve the just, speedy, and inexpensive determination of actions, and, when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive." Id. (footnotes omitted).

In the present case, plaintiffs not only have no evidence to support their allegations against Ramirez, the evidence they have come forward with actually disproves their allegations against him. In April 1998, plaintiff Hefner produced a letter allegedly given to him in October 1990, a couple of weeks after United took over the contract at Bayview. This letter states that the alleged blacklist was prepared by INS officials, **NOT** Ramirez. Where, as here, the plaintiffs'

- 8 -

own evidence disproves their allegations against a particular defendant, that defendant should not be required to go through the energy and expense of defending such claims at trial.

Thus, plaintiffs have no competent evidence supporting their allegations. To the contrary, their own documents disprove their claims against Ramirez. Therefore, Ramirez is entitled to summary judgment as a matter of law.

## CONCLUSION

In summary, plaintiffs remaining claims against Ramirez should be summarily dismissed for two independent reasons. First, their claims are governed exclusively by federal and state civil rights statutes. Although they initially attempted to assert these claims under the civil rights statutes, those claims have already been dismissed. They cannot now circumvent the procedures and remedies under the civil rights statutes by recasting their claims under common law tort theories. Since their remaining claims are preempted by the civil rights statutes, they should be dismissed with prejudice.

Even if their claims were not preempted by statutory law, they should be dismissed because plaintiffs have no evidentiary support for their allegations again Ramirez. Indeed, the very documents upon which they rely in contending that they were blacklisted from Bayview state that this alleged blacklist was prepared by INS officers, not Ramirez. Thus, plaintiffs have no

evidence to prove essential elements of their claims against Ramirez, and therefore, summary

judgment is appropriate.

Respectfully submitted,

RODRIGUEZ & RODRIGUEZ

By: *Richard R. Rodriguez* by permission cpy
Richard R. Rodriguez
1117 East Harrison St.
Harlingen, Texas  78550
Telephone: (956) 425-4992

ATTORNEYS FOR DEFENDANT,
VICENTE RAMIREZ

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Memorandum in Support of

Motion for Summary Judgment was served via certified mail, return receipt requested, on the

following counsel of record on this the 1st day of ___April___, 1999:

Denis A. Downey
Attorney at Law
1185 F.M. 802, Suite #3
Brownsville, Texas 78521

Nancy L. Masso
Assistant U.S. Attorney
P. O. Box 1671
Brownsville, Texas   78522-1671

Norton A. Colvin, Jr.
Laura J. Urbis
Rodriguez, Colvin & Chaney, L.L.P.
1201 E. Van Buren St.
P. O. Box 2155
Brownsville, Texas 78522

- 10 -

Robert Whittington
Sanchez, Whittington & Janis
100 North Expressway 83
Brownsville, Texas   78521-2257

Thomas H. Kiggans
Phelps Dunbar, L.L.P.
445 North Blvd., Suite 701
P. O. Box 4412
Baton Rouge, LA   70821-4412

Richard R. Rodriguez / by permission
cpg

- 11 -

CutePDF - www.fasiso.com



NUMBER 13-93-478-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI

---

CYNTHIA RODRIGUEZ, ET AL.,                               Appellants,

v.

VICENTE RAMIREZ, ET AL.,                                 Appellees.

---

On appeal from the 197th District Court of Cameron County, Texas.

---

# OPINION

Before Chief Justice Seerden and Justices Hinojosa and Carr[1]
Opinion by Justice Hinojosa

Appellants, Cynthia Rodriguez, Jovita Urrutia, Beatriz Huerta, and Anthony

Hefner, sued appellees, Burns International, Inc., United International Investigative

Services, Inc., and Vicente Ramirez.  Appellants pleaded facts that might support

---

[1] Assigned to this Court by the Chief Justice of the Supreme Court of Texas
pursuant to TEX. GOV'T CODE ANN. §74.003 (Vernon 1988).

EXHIBIT

A

claims under several theories of recovery. The trial court, without specifying the grounds for its ruling, granted appellees' motions for summary judgment and entered judgment that appellants take nothing from appellees. By three points of error, appellants contend that the trial court erred in granting appellees' motions for summary judgment. We affirm in part and reverse and remand in part.

All four appellants worked as guards at the Immigration and Naturalization Service (INS) federal detention center in Bayview, Texas. Appellants worked for Burns until September 21, 1990, when Burns' contract with the INS expired. Except for Huerta, appellants were not hired by Burns' successor, United.

On August 28, 1992, appellants filed suit against Burns, United, and Vicente Ramirez, a detention center supervisor who worked for Burns and subsequently United. Rodriguez and Urrutia claimed that they were sexually harassed and assaulted by Ramirez and that they reported Ramirez's actions to Burns, which failed to take sufficient action. Rodriguez and Urrutia also complained that Burns failed to act on their numerous reports that Burns employees sexually harassed female detainees at the Bayview Detention Center. Rodriguez and Urrutia further alleged that Burns and Ramirez retaliated for these complaints by conspiring with United to prevent Rodriguez and Urrutia from being employed by United. Rodriguez and Urrutia claimed that they were not hired by United as a result of this conspiracy.

Huerta asserted that she was harassed by United in retaliation for cooperating with federal investigators inquiring into the allegations of sexual harassment at the

2

detention center. Huerta also claimed that United fired her because she was pregnant and that United improperly deducted money from her paycheck for health insurance, which United failed to provide.

Like Rodriguez and Urrutia, Hefner claimed that Burns, Ramirez, and United conspired to prevent him from being employed by United. Hefner asserted that Burns, Ramirez, and United entered into this conspiracy in retaliation for his actions in defense of the female security guards and detainees at the Bayview Detention Center.

Neither Ramirez nor United filed special exceptions, but Burns specially excepted to appellants' original petition. The trial court's docket sheet reflects both a hearing on Burns' special exceptions and the entry of a corresponding order, which is not part of the appellate record in this case. After the trial court's order on Burns' special exceptions, appellees amended their petition to address many of Burns' complaints. Burns neither immediately filed additional special exceptions nor moved to have unresponsive portions of appellants' pleadings struck. Instead, all three appellees moved for summary judgment.

While their motions for summary judgment were pending, Burns and United filed special exceptions to appellants' first amended petition. Nothing in the appellate record indicates that the court ruled on Burns' or United's special exceptions to appellants' first amended petition. As in their original petition, appellants pleaded facts in their first amended petition that might support claims under several theories of recovery.

3

Without specifying the grounds for its ruling, the trial court granted three separate summary judgments that appellants take nothing from appellees. By granting each appellee a take-nothing summary judgment, the trial court purported to dispose of every claim that appellants raised in their first amended petition. In order to sustain these summary judgments, we must determine that the pleadings and summary judgment evidence prove that no genuine issue of material fact exists and that the movants are entitled to judgment as a matter of law. *McFadden v. American United Life Ins. Co.*, 658 S.W.2d 147, 148 (Tex. 1983). We must accept all evidence favorable to the nonmovants as true, indulge the nonmovants with every favorable inference, and resolve any doubt in the nonmovants' favor. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 549 (Tex. 1985).

The trial court granted each of the three summary judgments under review without specifying the grounds upon which it relied. Moreover, each defendant's motion for summary judgment raised several grounds that might have served as the basis for the trial court's general grant of summary judgment. Accordingly, we must affirm the summary judgment if any one of the theories advanced in the motion for summary judgment is meritorious. *Martinez v. Corpus Christi Area Teachers Credit Union*, 758 S.W.2d 946, 950 (Tex. App.--Corpus Christi 1988, writ denied). Correspondingly, we must reverse the summary judgment and remand the causes of action that were not addressed in the motion for summary judgment. *Mafrige v. Ross*, 866 S.W.2d 590, 591-92 (Tex. Crim. App. 1993); *Celestino v. Mid-Am. Indem. Ins.*

4

*Co.*, 883 S.W.2d 310, 313-14 (Tex. App.--Corpus Christi 1994, writ denied). Any such remand must also include claims that might be reasonably inferred from a liberal construction of appellants' pleadings because appellees obtained no ruling on their special exceptions. *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 933-34 (Tex. 1983); *Cox v. Galena Park Indep. Sch. Dist.*, 895 S.W.2d 745, 749 (Tex. App.--Corpus Christi 1994, n.w.h.); *see also Smithkline Beecham Corp. v. Doe, 38 Tex. Sup. Ct. J. 1058, 1064-65 (July 21, 1995)* and *Boyles v. Kerr*, 855 S.W.2d 593, 601 (Tex. 1993) (discussing construction of pleadings in absence of special exceptions).

### *United International Investigative Services, Inc.*

By their first point of error, appellants contend that the trial court erred in granting United's motion for summary judgment. We will first address which specific claims and grounds for summary judgment have been properly submitted for review.

United attacked appellants' claims for civil conspiracy in a brief supporting its motion for summary judgment. We cannot consider this ground for summary judgment because it was not stated in the motion for summary judgment itself. *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 339-41 (Tex. 1993). United's summary judgment motion and proof do, however, specifically address the following claims: 1) employment discrimination and harassment claims of Rodriguez, Urrutia, and Hefner; 2) appellants' claims for intentional infliction of emotional distress; 3) appellants' claims for false imprisonment and other assaultive torts based on Ramirez's acts for which United may be held liable; 4) Huerta's statutory

5

employment discrimination and harassment claims; 5) Huerta's negligence claims for physical or emotional harm rising from her employment with United; 6) and Huerta's claims that United failed to provide health insurance as promised.

Regarding the first five claims, appellants neither presented contrary evidence in response to United's motion for summary judgment nor attacked the legal sufficiency of those grounds on appeal. Accordingly, summary judgment on the first five claims is not under review because appellants have not perfected appeal from summary judgment on those claims. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678-79 (Tex. 1979); *Thompson v. Vinson & Elkins*, 859 S.W.2d 617, 621 (Tex. App.--Houston [1st Dist.] 1993, writ denied). Accordingly, we overrule appellants' first point of error as it relates to the following claims against United: 1) employment discrimination and harassment claims of Rodriguez, Urrutia, and Hefner; 2) appellants' claims for intentional infliction of emotional distress; 3) appellants' claims for false imprisonment and other assaultive torts based on Ramirez's acts for which United may be held liable; 4) Huerta's statutory employment discrimination and harassment claims; and 5) Huerta's negligence claims for physical or emotional harm rising from her employment with United.

The only claim against United that may be reviewed by this court is Huerta's claim that United failed to provide health insurance as promised. United offered two grounds for summary judgment on Huerta's claim that United failed to provide the promised health insurance after making deductions from her paycheck for this

6

purpose. First, United contended that it is entitled to summary judgment based on the affidavit of William Guidice, United's president and chief executive officer. Second, United argued that Huerta's claim is preempted by the federal Employee Retirement Income Security Act. 29 U.S.C. §§ 1001-1461 (1988) ("ERISA").

Guidice's affidavit states as follows:

> Once the said contract with the Service was "assumed" by UNITED, it appeared that none of the employees had previously received health insurance, although current employees of UNITED -- after an insurer could be retained -- could receive health insurance. Thus, there was never a deduction for health insurance from the base wage; there was a "health and welfare allowance" *under the contract with the Service for* employees, which the employer could apply to a pension or disburse in cash. In that health insurance was not available for the employees, such employees (such as BEATRIZ HUERTA), were paid in cash in lieu of such insurance, and if reinstated, she would have, presumably, been insured.

As president of United, Guidice is considered a party with an interest in this litigation. *See Panama-Williams, Inc. v. Lipsey*, 576 S.W.2d 426, 431 (Tex. Civ. App.--Houston [1st Dist.] 1978, writ ref'd n.r.e.). Affidavit testimony from an interested witness will support a motion for summary judgment only if that evidence is uncontroverted. TEX. R. CIV. P. 166a(c).

Huerta's affidavit is attached to appellants' response to United's motion for summary judgment. In her affidavit, Huerta states as follows:

> I was told by UIIS that guards would have health insurance. Health insurance was not provided by UIIS nor am I aware of any cash payment being made to myself in place of health insurance.

We find that despite the phrase "nor am I aware," Huerta's affidavit controverts Guidice's testimony because the context of Huerta's statement shows that she has personal knowledge of the matter she is testifying about. *See Moya v. O'Brien*, 618

7

S.W.2d 890, 893 (Tex. Civ. App.--Houston [1st Dist.] 1981, writ ref'd n.r.e.); *see also Coleman v. United States Sav. Ass'n*, 846 S.W.2d 128, 131 (Tex. App.--Fort Worth 1993, no writ) (distinguishing apparently conflicting caselaw). Accordingly, Guidice's affidavit cannot be used as summary judgment evidence to refute the claim that United failed to provide health insurance as promised. We cannot affirm the trial court's judgment on Huerta's claim based on this ground.

As its second ground for summary judgment on Huerta's claim, United contends that it established federal preemption as a matter of law. We disagree. The United States Supreme Court broadly construes the ERISA preemption of all state laws insofar as they relate to employeé benefit plans. *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 144 (1990); *see* 29 U.S.C. §§ 1144(a). Nevertheless, not every employee benefit plan qualifies as an ERISA plan. *E.g., Taggart Corp. v. Life & Health Benefits Admin.*, 617 F.2d 1208 (5th Cir.), *cert. denied,* 450 U.S. 1030 (1980); *see also Hansen v. Continental Ins. Co.*, 940 F.2d 971, 977-78 (5th Cir. 1991) (discussing requisites for benefit plans under ERISA). United wholly abandoned the task of establishing that the qualities of the disputed employee benefit plan bring that plan within the scope of ERISA. Accordingly, we must resolve our doubts on this issue in favor of the nonmovant, Huerta. *Nixon*, 690 S.W.2d at 549. As with United's first ground for summary judgment, we cannot affirm the trial court's judgment on Huerta's claim based on this second ground.

We hold that the trial court erred in granting United's motion for summary judgment on appellants' claims against United for civil conspiracy and on Huerta's

8

claims that United failed to provide health insurance as promised. We sustain appellants' first point of error as to these claims.

We AFFIRM the trial court's summary judgment in favor of United on the following claims: 1) employment discrimination and harassment claims of Rodriguez, Urrutia, and Hefner; 2) appellants' claims for intentional infliction of emotional distress; 3) appellants' claims for false imprisonment and other assaultive torts based on Ramirez's acts for which United may be held liable; 4) Huerta's statutory employment discrimination and harassment claims; and 5) Huerta's negligence claims for physical or emotional harm rising from her employment with United.

We REVERSE the trial court's summary judgment on appellants' claims against United for civil conspiracy and Huerta's claims against United that United failed to provide health insurance as promised and REMAND these claims to the trial court for further proceedings.

### Vicente Ramirez

By their second point of error, appellants contend that the trial court erred in granting Ramirez's motion for summary judgment. We will first address which claims and grounds for summary judgment have been properly submitted for review.

By his motion for summary judgment, Ramirez challenged 1) Hefner's claims for conversion, 2) Urrutia's claims for false imprisonment and intentional infliction of emotional distress, 3) Rodriguez's claims for assault, and 4) appellants' claims for tortious interference with business relationships.

On the claims for conversion, appellants presented no summary judgment evidence in response to Ramirez's motion for summary judgment and have not raised that issue on appeal. Consequently, summary judgment on that cause of action is not under review. *Clear Creek Basin Auth.*, 589 S.W.2d at 678-79; *Thompson*, 859 S.W.2d at 621. We overrule appellants' second point of error as it relates to Hefner's claims for conversion.

As to Urrutia's claims for false imprisonment and intentional infliction of emotional distress, Ramirez raised the affirmative defense of limitations. Appellants filed suit against appellees on August 28, 1992. Ramirez's motion for summary judgment incorporated excerpts from Urrutia's deposition in which she admitted that incidents alleged in the petition occurred no later than July of 1990. The statute of limitations for both false imprisonment and intentional infliction of emotional distress is two years. TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a) (Vernon 1986); *see also Bhalli v. Methodist Hosp.*, 896 S.W.2d 207, 211 (Tex. App.--Houston [1st Dist.] 1995, n.w.h.) (intentional infliction of emotional distress); *Sevenson v. Koutzarov*, 795 S.W.2d 313, 318-19 (Tex. App.--Houston [1st Dist.] 1990, writ denied) (false imprisonment).

Similarly, Ramirez's motion for summary judgment on Rodriguez's claims for assault was based on limitations and included excerpts from Rodriguez's deposition. Rodriguez also admitted that any assault occurred more than two years before appellants filed suit. *See Armstrong v. Armstrong*, 750 S.W.2d 45, 46 (Tex. App.--

10

Fort Worth 1988, writ denied) (citing TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a) for two-year statute of limitations on assault).

In response to both limitations arguments, appellants conceded that the incidents occurred more than two years before they filed suit. Nevertheless, appellants contended that Ramirez did not prove his entitlement to judgment as a matter of law because he failed to negate any hypothetical application of the discovery rule or tolling provisions. We disagree.

As movant for summary judgment based on limitations, Ramirez had the burden of establishing that limitations bars the actions as a matter of law. *See Zale Corp. v. Rosenbaum*, 520 S.W.2d 889, 891 (Tex. 1975). Ramirez negated application of the discovery rule by the deposition excerpts in which Urrutia and Rodriguez conceded that the alleged incidents occurred more than two years before they filed suit. Urrutia's and Rodriguez's discovery of the incidents that they allege in their petition is conclusively established by their deposition testimony.

Regarding tolling provisions, appellants did not raise the possible applicability of any specific suspension statute either in their response to Ramirez's limitations or in their petition. In *Zale*, the supreme court framed the movant's obligation to address tolling statutes as a contingent responsibility: "*Where the non-movant interposes a suspension statute . . . the limitations defense is not conclusively established until the burden of negating the applicability of these issues.*" *Id.* (emphasis added). When neither the pleadings nor the response to the motion for summary judgment raise a specific suspension statute, a movant should not have to address the potential

11

applicability of every conceivable tolling provision. Accordingly, we overrule appellants' second point of error as it relates to Rodriguez's claims for assault and Urrutia's claims for false imprisonment and intentional infliction of emotional distress.

Under the final claim addressed in his motion for summary judgment, Ramirez asserted that appellants could not maintain their claims for tortious interference with business relationships. In support of this argument, Ramirez stated two separate grounds: 1) that he could not be sued as an employee of the companies involved, and 2) that appellants and United had not formed a contract susceptible to interference. Ramirez neither offered summary judgment proof to support these grounds for summary judgment nor cited any caselaw for these propositions. *But see Eloise Bauer & Assocs., Inc. v. Electronic Realty Assocs., Inc.*, 621 S.W.2d 200, 203-04 (Tex. App.--Texarkana 1981, writ ref'd n.r.e.) (even with conclusive proof of employee's good faith, employees' privilege to induce breach of contract does not extend to wrongful means); *Harshberger v. Reliable-Aire, Inc.*, 619 S.W.2d 478, 481 (Tex. Civ. App.--Corpus Christi 1981, writ dism'd) (claim for tortious interference with business relationships "may exist even if no contract is yet in existence"). We hold that the trial court erred in granting Ramirez's motion for summary judgment on appellants' claims against Ramirez for tortious interference with business relationships. We sustain appellants' second point of error as it relates to these claims.

We AFFIRM the trial court's summary judgment in favor of Ramirez on the following claims: 1) Hefner's claims for conversion; 2) Rodriguez's claims for assault;

12

CutePDF - www.texto.com

and 3) Urrutia's claims for false imprisonment and intentional infliction of emotional distress.

We REVERSE the trial court's summary judgment on appellants' claims against Ramirez for tortious interference with business relationships and REMAND these claims to the trial court for further proceedings.

*Burns International, Inc.*

By their third point of error, appellants contend that the trial court erred in granting Burns' motion for summary judgment.

Burns' motion for summary judgment challenged the following causes of action: 1) appellants' statutory employment discrimination claims; 2) appellants' negligence claims for physical or emotional harm arising from their employment with Burns; 3) appellants' claims for wrongful discharge; 4) Hefner's claims for conversion; 5) Rodriguez's claims for assaultive torts based on Ramirez's acts attributable to Burns; 6) Urrutia's claims for false imprisonment and intentional infliction of emotional distress based on Ramirez's acts attributable to Burns; 7) appellants' claims based on Ramirez's sexual misconduct for which Burns may be held liable; 8) appellants' claims that their employment policy manual was contractual in nature and for breach of that contract; and 9) appellants' claims for tortious interference with business relationships.

Like United, Burns challenged appellants' claims for civil conspiracy in a brief supporting its motion for summary judgment. We cannot affirm the trial court's judgment based on any grounds for summary judgment raised in Burns' brief.

13

*McConnell*, 858 S.W.2d at 339-41.  We hold that the trial court erred in granting Burns' motion for summary judgment on appellants' claims against Burns for civil conspiracy.  We sustain appellants' third point of error as it relates to these claims.

In their response to Burns' motion for summary judgment, appellants did not present contrary summary judgment evidence to rebut Burns' grounds for summary judgment on the following claims: 1) appellants' statutory employment discrimination claims; 2) appellants' negligence claims for physical or emotional harm arising from their employment with Burns; 3) appellants' claims for wrongful discharge; and 4) Hefner's claims for conversion.  Furthermore, appellants' brief does not attack the legal sufficiency of these grounds on appeal.  As a result, these claims are no longer subject to appeal.  *Clear Creek Basin Auth.*, 589 S.W.2d at 678-79.  Similarly, appellants conceded that Huerta brought no cause of action against Burns. Accordingly, we overrule appellants' third point of error as it relates to the following claims: 1) appellants' statutory employment discrimination claims; 2) appellants' negligence claims for physical or emotional harm arising from their employment with Burns; 3) appellants' claims for wrongful discharge; 4) Hefner's claims for conversion; and 5) Huerta's claims against Burns.

Burns asserted the statute of limitations against Rodriguez's claims for assaultive torts and Urrutia's claims for false imprisonment and intentional infliction of emotional distress.  As proof of when the alleged incidents took place, Burns offered excerpts from Rodriguez's and Urrutia's depositions.  These deposition excerpts show that the acts of assault, false imprisonment, and intentional infliction

14

of emotional distress all occurred more than two years before this suit was filed. We overrule appellants' third point of error as it relates to 1) Rodriguez's claims for assaultive torts based on Ramirez's acts attributable to Burns and 2) Urrutia's claims for false imprisonment and intentional infliction of emotional distress based on Ramirez's acts attributable to Burns.

Regarding all other claims against Burns based on Ramirez's sexual misconduct, Burns argued that it conclusively proved that Ramirez's acts were beyond the scope of his employment. By itself, however, such evidence is insufficient to establish Burns' right to summary judgment on all claims based on Ramirez's acts for which Burns may be held liable. Appellants petition asserted that Burns tolerated many instances of sexual harassment and often failed to discipline transgressors. Under a liberal construction of appellants' pleadings, Burns might be held liable for Ramirez's acts through its own negligence in Ramirez's hiring, supervision, retention, or assignment. *See Estate of Arrington v. Fields*, 578 S.W.2d 173, 177-79 (Tex. Civ. App.--Tyler 1979, writ ref'd n.r.e.). We find that Burns' summary judgment motion and evidence fail to resolve or even address this cause of action. Thus, we cannot affirm the trial court's judgment on the ground that Burns cannot be held liable for Ramirez's sexual misconduct. We hold that the trial court erred in granting Burns' motion for summary judgment on appellants' claims against Burns based on Ramirez's sexual misconduct. We sustain appellants' third point of error as it relates to these claims.

15

In response to appellants' contractual causes of action, Burns complained that appellants' pleadings were too vague and that appellants failed to offer sufficient evidence to raise a fact issue. Summary judgment cannot serve as a substitute for special exceptions as a remedy for vague pleadings. *Massey*, 652 S.W.2d at 933-34. Moreover, the entitlement to summary judgment is not measured by whether the combined "summary judgment proof *raises fact issues* with reference to the essential elements of a plaintiff's claim." *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex. 1970). Rather, the movant becomes entitled to summary judgment when such "proof *establishes as a matter of law that there is no genuine issue of fact* as to one or more of the essential elements of the plaintiff's cause." *Id.* The nonmovant need not offer contrary summary judgment proof until the movant first establishes its right to summary judgment and the nonmovant then seeks to avoid this right. *Clear Creek Basin Auth.*, 589 S.W.2d at 678-79; *Swilley v. Hughes*, 488 S.W.2d 64, 67 (Tex. 1972).

Burns offered no summary judgment proof to disprove appellants' claims that their employment policy manual was contractual in nature. It is true that employment policy manuals do not generally create contractual rights restricting the employment-at-will doctrine. *See, e.g., Salazar v. Amigos Del Valle, Inc.*, 754 S.W.2d 410, 413 (Tex. App.--Corpus Christi 1988, no writ); *Reynolds Mfg. Co. v. Mendoza*, 644 S.W.2d 536, 539 (Tex. App.--Corpus Christi 1982, no writ). However, under certain circumstances an employment policy manual can create contractual limitations on an employer's right to discharge an employee. *Wilhite v. H.E. Butt Co.*, 812 S.W.2d 1,

16

6 (Tex. App.--Corpus Christi 1991, no writ); *see also Federal Express v. Dutschmann*, 846 S.W.2d 282, 283 (Tex. 1993) (negating possible exception to general rule that policy manuals do not create contractual rights by reference to terms of the manual); *accord Aiello v. United Air Lines, Inc.*, 818 F.2d 1196, 1198 (5th Cir. 1987) (finding exception under Texas law to general rule that employment policies do not create contractual rights). The absence of evidence on this issue does not negate appellants' cause of action. Instead, this lack of evidence precludes summary judgment in favor of Burns on this claim. *Clear Creek Basin Auth.*, 589 S.W.2d at 678-79; *Swilley*, 488 S.W.2d at 67. We hold that the trial court erred in granting Burns' motion for summary judgment on appellants' claims against Burns that their employment policy manual was contractual in nature and for breach of that contract. We sustain appellants' third point of error as it relates to these claims.

The final cause of action that Burns challenged in its motion for summary judgment is appellants' claims for tortious interference with business relationships. Burns argued that it was privileged to comment on appellants' fitness for jobs with United and that appellants formed no contract with United that was susceptible to interference.

We find that Burns presented insufficient summary judgment evidence to support these arguments. We have no basis to determine whether Burns may have exceeded its privilege to discuss appellants' suitability for future employment. *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989) (privilege is affirmative defense requiring proof of good faith). Similarly, we must view evidence of the

17

surrounding circumstances to determine whether a prospective contract is capable of being interfered with. *Harshberger*, 619 S.W.2d at 481 (citing *Cooper v. Steen*, 318 S.W.2d 750, 757 (Tex. Civ. App.--Dallas 1958, no writ)).

Summary judgment was improper absent evidence addressing the claim that appellants would have enjoyed a reasonable expectation of employment with United if they had not filed sexual harassment complaints. Weaknesses in appellants' corroborating evidence have no effect on the propriety of summary judgment because Burns never established its preliminary entitlement to summary judgment. *Clear Creek Basin Auth.*, 589 S.W.2d at 678; *Swilley*, 488 S.W.2d at 67. Consequently, neither of Burns' grounds for summary judgment on appellants' claims for tortious interference will support the trial court's judgment. We hold that the trial court erred in granting Burns' motion for summary judgment on appellants' claims against Burns for tortious interference with business relationships. We sustain appellants' third point of error as it relates to these claims.

We AFFIRM the trial court's summary judgment in favor of Burns on the following claims: 1) appellants' statutory employment discrimination claims; 2) appellants' negligence claims for physical or emotional harm arising from their employment with Burns; 3) appellants' claims for wrongful discharge; 4) Hefner's claims for conversion; 5) Huerta's claims against Burns; 6) Rodriguez's claims for assaultive torts based on Ramirez's acts attributable to Burns; and 7) Urrutia's claims for false imprisonment and intentional infliction of emotional distress based on Ramirez's acts attributable to Burns.

18

We REVERSE the trial court's summary judgment on 1) appellants' claims against Burns for civil conspiracy, 2) appellants' claims against Burns based on Ramirez's sexual misconduct, 3) appellants' claims against Burns that their employment policy manual was contractual in nature and for breach of that contract, and 4) appellants' claims against Burns for tortious interference with business relationships and REMAND these claims to the trial court for further proceedings.

FEDERICO G. HINOJOSA, JR.
Justice

Opinion ordered not published.
TEX. R. APP. P. 90.

Opinion delivered and filed this
the 12th day of October, 1995.

19

*Mr. Payan gave me on Oct. 9, 1990.*
*Edwardo Payan*
*Deportation Superior*

41

EXHIBIT

B

TONY

I hope that this information letter will help in your efforts to clean
up the illegal activities at the detention center at Bayview.  I could
not help you when you asked me if I knew anything because I feared for
my job.  The information that I will inform you about can all be proven
if the right people investigate.  I will not sign this letter at this
time, i probably won't have to, the real truth will come out.

Your T.V. report states that the female detainees were/are having sex
with the officers in return for favors and to avoid deportation.  You
were probably shooting kn the dark, the dirty fact is that you are right.
That involves both INS and Burns officers, in order to hide the truth,
the Burns officer females that helped the INS officers were not hired by
the new company.  Mr Ruiz did all that he had in his power to hide the
fact that Charles Gantt was deeply involved with a detainee female.  It
was a very well known fact that he would go to 35, have the guard on duty
call out the female and stay with her for hours, he brought he gifts
which we all know are against regulations.  Dragon received a call from
Sgt. Gantt in control and left a message for the female detainee to call
him back and left a number, the number was for a telephone booth in
Brownsville, when the number was called Gantt answered.  That is when
Mr. Rubio suspended him,  Delia Gannt was the secretary and very very
good friend with Mr. Ruiz, because of their affair, Mr. Ruiz did not
allow Mr. Rubio to suspend Sgt. Gantt, instead he was paid for the days
that he was off duty and Mr. Rubio was chewed out by Mr.Ruiz.  Mr.
Rubio has letters that the female witnesses wrote to complain about Sgt
Gantt, I saw them and made copies.

Mr. Molinar was seen taking a female by the name ofBlanca or Bianca into
his office after the females were in and after headcount.  She was taken
to his office to clean, it is hard to clean when you are naked.  These
things have happened, people are afraid to say anything or make reports

Remember the big scandal when Dragon, Dillaard, Cynthia Rodriguez, Huerta.
and Pete were removed as runners and deportaion helpers, trnasferred to
other shifts and accussed of selling the new arrival lists to the attorneys????????
As things turned out, the real criminal is Mr. Ruiz.  I was runner the
day that this fact was discovered, it was found that he was giving the
list to Attorney Roberto Arias, if you remember, Arias disappeared for
a long time after the discovery.  I understand that an investigation
by what INS calls OPR is pending, or maybe it was white washed to protect
Mr. Ruiz.  The rumor is that he was being paid for the lists, if you
think about it, it could be very profitable,  the lists should still be
available unless Mr. Ruiz had them destroyed.

I was very embarrassed on the Sunday that Mr. Ruiz was showing off to a
friend that he had on a tour, he hollered and threate021ed to fire us for
not standing; when a superior enters a room.  Mr. Ruiz is a loud mouth
bully and show off, he needs to learn how to treat people.  He gets his
way only beeause he will fire you if you dont say what he wants to hear.

Mr. Ruiz is also guilty of sex during duty hours, the other female guards
knew that if they wanted something, they would send Norma Rangel to give
him a blow job, how else do you think she was selected for INS???????
If she is given a lie dectector test she will not be able to pass.  The
other females feel really grossed out that  Mr. Ruiz is always making
crude sexist remarks to them, worse is the fact that he is fat like a frog.

The BLACK list does exist, it was made by Ruiz and Molinar, think about
it, the people that were not hired are for the most part good workers
they all had something in common, they all have information which is
harmful to Ruiz and Molinar, in a nutshell they know too much.  The
new company was duped by them.  If you want more information, i will
keep my eyes and ears open, if you want the letters about Gantt, place
an ad in the Bargain Book central edition I'll look for it.

                                              GOOD LUCK