# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# -BROWNSVILLE DIVISION-

United States District Court
Southern District of Texas
FILED

AUG 16 2001

Michael N. Milby, Clerk of Court
By Deputy Clerk

| | | |
|---|---|---|
| CYNTHIA RODRIGUEZ, JOVITA A. URRUTIA, BEATRIZ HUERTA, and ANTHONY HEFNER, | § § § § § | |
| Plaintiffs, | § § | |
| VS. | § § | CIVIL ACTION NO. B-98-085 |
| VICENTE RAMIREZ, BURNS INTERNATIONAL, INC., UNITED INTERNATIONAL INVESTIGATIVE SERVICES, and U.S. IMMIGRATION AND NATURALIZATION SERVICE, | § § § § § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant United International Investigative Services, Inc.'s Motion for Summary Judgment (Docket No. 22) and the Supplement to the Motion for Summary Judgment (Docket No. 52). For the reasons discussed below, the Court will *sua sponte* dismiss this action for failure to state a claim upon which relief could be granted.

## BACKGROUND

The following factual summary is derived from a reading of the aforementioned motion and pleadings. The Bayview Detention Center ("Bayview") houses persons from other nations whose right to be in the United States is at issue. In the particular period of time covered by this lawsuit, a majority of Bayview detainees were persons from war-torn Central America who were in the United States as refugee claimants. While Bayview is run by the Immigration and Naturalization Service, the Service has historically hired independent contractors to manage immigrant detainees

at federal installations like Bayview. Prior to September 27, 1990, Burns International Security Services ("Burns") had the contract with the Immigration and Naturalization Service at Bayview. When the Bayview guard contract held by Burns expired, bids were taken on a new guard contract. Defendant United International Investigative Services' ("UIIS") bid was subsequently selected. On or about September 27, 1990, UIIS contracted with the Immigration and Naturalization Service to provide security services at Bayview. As was the custom and practice in such situations, UIIS offered positions to the Burns' guards. Such a custom was mutually beneficial for both companies, as the incoming company needed experienced, local guards, while the outgoing guard company typically wanted its guards to be hired so as to minimize possible unemployment insurance claim costs. With the exception of Beatriz Huerta, plaintiffs were denied employment by UIIS. *See* Def. Exhibit 1, *Rodriguez v. Ramirez*, Cause No. 13-93-478-CV (Tex. App. – Corpus Christi 1993). Plaintiffs state that they were not hired because Burns supervisors talked to UIIS upper management and convinced the management not to hire them in retaliation for prior complaints that plaintiffs made against Burns.

1. The Allegations of Reverend Hefner:

Burns employed Hefner as a guard employed at the Bayview Detention Center. Hefner alleges that he observed the sexual harassment of female detainees and that he complained repeatedly about this abuse. Hefner also helped other guards with their complaints. He claims that UIIS did not hire him because of his activities while working for Burns.

2. The Allegations of Jovita Urrutia

Urrutia had filed claims of sexual harassment against Burns' supervisors. Such claims were not substantiated by the EEOC. Urrutia had also complained about the exploitation of female

2

detainees. Urrutia alleges that UIIS's refusal to hire her was clearly motivated by the desire of Burns' supervisors to get rid of women who had filed EEOC or detainee complaints against them.

3. The Allegations of Cynthia Rodriguez

Like Urrutia, Rodriguez made complaints about the sexual exploitation of female detainees and unsuccessfully pursued EEOC complaints of personal sexual harassment. She, too, asserts that Burns conspired with UIIS to prevent her from being employed by UIIS in retaliation for her complaints against Burns.

4. The Allegations of Beatriz Huerta

Huerta's principal complaint is that she, along with all other UIIS hirees, had been promised health insurance coverage by UIIS. Such coverage was to include maternity benefits. During her employment with UIIS, Huerta became pregnant and told her health care providers that she had UIIS health insurance. However, the providers discovered that no such coverage existed. Huerta paid the medical bills herself and made a complaint to UIIS concerning the missing insurance. She now alleges that UIIS fired her in retaliation for her complaint.

PROCEDURAL BACKGROUND

On August 28, 1992, plaintiffs filed suit against Burns, UIIS, and Vicente Ramirez, a detention center supervisor who worked for Burns and subsequently UIIS. On March 12, 1993, UIIS filed a motion for summary judgment in state court, attempting to dispose of all of the issues as a matter of law. On May 11, 1993, the trial court granted the summary judgment motion. On July 14, 1993, plaintiffs appealed the case to the Texas Court of Appeals, 13th Judicial District, Corpus Christi, Texas. The Court of Appeals affirmed in part and reversed in part, remanding the issues of civil conspiracy and Huerta's insurance claims to the trial court for further proceedings.

3

Plaintiffs then filed their Second Amended Original Petition alleging three causes of action against UIIS - civil conspiracy, Huerta's insurance claims, and Huerta's claim of intentional infliction of emotional distress. UIIS proceeded to file a motion for summary judgment. The state court granted summary judgment dismissing all of Huerta's health insurance claims and her claim of intentional infliction of emotional distress. Remaining before this Court is the civil conspiracy claim against UIIS, i.e. that plaintiffs Urrutia, Rodriguez, and Hefner were not hired (or if hired, immediately fired) because of a conspiracy between defendants whereby Burns gave bad employee references concerning them to UIIS in retaliation for having reported and opposed sexual harassment. Also pending is Huerta's claim that she was fired in retaliation for making complaints about her health insurance coverage. Any claims against Burns and Vicente Ramirez are no longer before the Court because of an order granting defendants' agreed motion to dismiss these defendants with prejudice. (Docket No. 37).

## DISCUSSION

Plaintiffs' claims that they were "blacklisted" by Burns in retaliation for making complaints on behalf of the Bayview detainees, as well as Huerta's claim of retaliation, constitute a private whistleblower claim. *See, e.g., Winters v. Houston Chronicle Publishing Co.*, 795 S.W.2d 723 (Tex. 1990); *Thompson v. El Centro Del Barrio*, 905 S.W.2d 356 (Tex. App. – San Antonio 1995, writ denied). As such, the Texas Supreme Court has specifically held that no such action exists in the private employment context.[1] *See Rodriguez v. Corvel Corp.*, 2001 WL 685734, *3 (W.D. Tex. Mar

---

[1] The Texas Commission on Human Rights Act ("TCHRA") does apply to private employers and prohibits retaliation for engaging in a protected activity. *See* TEX. LAB. CODE ANN. § 21.055 (Vernon 1997); *Austin v. Healthtrust, Inc.*, 967 S.W.2d 400, 401 (Tex.1998). However, the acts, as alleged by plaintiffs in this case, do not fall within the discriminatory practices that are protected under the TCHRA. *See* TEX. LAB. CODE ANN. § 21.051, *et seq.*

29, 2001); *McLean v. U.S. Home Corp.*, 1999 WL 305241 (N.D. Tex. 1999); *Austin v. Healthtrust, Inc.*, 967 S.W.2d 400, 401-03 (Tex.1998). If plaintiffs were allowed to frame their claim in a common law context, they would, for all sakes and purposes, be able to circumvent the framework created by the Texas legislature to remedy retaliation by employers.[2] Therefore, the Court must *sua sponte* dismiss plaintiffs' common law retaliation claims for failure to state a claim upon which relief could be granted.

As for the retaliation claims based on the personal sexual harassment of Urrutia and Rodriguez, plaintiffs concede that such claims are normally addressed by Title VII. *See* Plaintiffs' Response to Defendants' Motion for Summary Judgment at 7; *see also* 42 U.S.C.A. § 2000e *et seq.* However, plaintiffs state that they could not file a Title VII claim because at the time UIIS refused to employ them, they were no longer employees of Burns, the company they allege blacklisted them. This is not a correct interpretation of the law as it stands in the Fifth Circuit. This circuit, along with a majority of circuits, has concluded that even former employees are protected from acts of

---

As recently as the 1995 Texas legislative session, an amendment to the Labor Code was proposed that would have created a "Whistleblower Act" for all private employees. *See* Tex. H.B. 622, 74th Leg., R.S. (1995). The proposed bill would have prohibited an employer from retaliating against an employee "who in good faith reports activities within the workplace that constitute a violation of law or would otherwise have a probable adverse effect on the public." *Id.* This version of the bill was rejected in legislative committee. An amended bill was then proposed that deleted protection for reports of activities that would have a "probable adverse effect on the public" in favor of the requirement that the reported activity "constitute a violation of law." *Compare id. with* Tex.C.S.H.B. 622, 74th Leg., R.S. (1995). However, the Legislature did not pass the modified bill. Rather than create a one-size-fits-all whistleblower statute, the Texas Legislature has instead opted to enact statutes that protect specific classes of employees from various types of retaliation. *See Austin*, 967 S.W.2d at 401.

[2]"Were we to create a broad-based whistleblower cause of action, it would in large part eviscerate the specific measures the Legislature has already adopted." *Austin*, 967 S.W.2d at 403.

retaliation under Title VII. *See Veprinsky v. Fluor Daniel, Inc.*, 87 F.3d 881, 884-85 (7th Cir. 1996); *EEOC v. J.M. Huber Corp.*, 927 F.2d 1322, 1331 & n. 41 (5th Cir.1991)(*following EEOC v. Cosmair, Inc., L'Oreal Hair Care Div.*, 821 F.2d 1085, 1088-89 (5th Cir.1987)); *Fields v. Phillips School of Business and Technology*, 870 F.Supp. 149, 153 (W.D. Tex. 1994) *affirmed by Fields v. Phillips School of Business*, 59 F.3d 1242 (5th Cir. 1995). As the Third Circuit pointed out:

> The need for protection against retaliation does not disappear when the employment relationship ends. Indeed, post-employment blacklisting is sometimes more damaging than on-the-job discrimination because an employee subject to discrimination on the job will often continue to receive a paycheck while a former employee subject to retaliation may be prevented from obtaining any work in the trade or occupation previously pursued.

*Charlton v. Paramus Bd. of Educ.*, 25 F.3d 194, 200 (3rd Cir. 1994). If Burns indeed blacklisted plaintiffs in retaliation for their claims of sexual harassment, plaintiffs would have a remedy under Title VII. However, since plaintiffs, by agreed motion, have dismissed with prejudice their claims against Burns, this point is now moot.

It is well established that a district court may *sua sponte* dismiss an action for failure to state a claim upon which relief could be granted. *See Bazrowx v. Scott*, 136 F.3d 1053 (5th Cir. 1998); *First Gibraltar Bank v. Smith*, 62 F.3d 133 (5th Cir. 1995); *Texas Carpenters Health Benefit Fund v. Philip Morris, Inc.*, 21 F.Supp.2d 664 (E.D. Tex.1998). Thus, "[e]ven if a party does not make a formal motion, the court on its own initiative may note the inadequacy of the complaint and dismiss it for failure to state a claim as long as the procedure employed is fair." CHARLES ALAN

6

WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: Civil 2d § 1357, p. 301. The Fifth Circuit has stated that fairness is achieved when the plaintiff is given an opportunity to amend, unless the plaintiff has alleged his best case, or if the dismissal was without prejudice. *See Bazrowx*, 136 F.3d at 1054. As the procedural background demonstrates, plaintiffs have had ample opportunity to allege their best case against UIIS. Further, both parties have extensively argued the applicability of Title VII claims to this action.

DONE at Brownsville, Texas, on this the 16th day of August, 2001.

_____
John Wm. Black
United States Magistrate Judge